CARRIE STAMBAUGH *et al.* Appellants, *vs.* NORA ELMORE
LUNG *et al.* Appellees.

*Opinion filed February 20, 1908.*

TRUSTS—*resulting trust cannot be established by doubtful evi-
dence.* A resulting trust in land cannot be established where it is
impossible to say, from the evidence, whether the money of the
complainant which went into the purchase of the land was bor-
rowed from her by the purchaser or came into his hands as her
agent or trustee.

APPEAL from the Circuit Court of Schuyler county; the
Hon. HARRY HIGBEE, Judge, presiding.

On February 12, 1907, Carrie Stambaugh and Cora
Finch, the appellants, filed their bill in the circuit court of
Schuyler county against Frank Hardin, Charles Hardin and
others for partition of one hundred acres of land located in
that county, the undivided eleven-thirtieths of eighty acres
of which is here in controversy. The bill alleges that com-
plainants and defendants specifically named above, upon the
death of one William Hardin, their father, each became
seized, as tenant in common, of an equal undivided one-
fourth interest in the said real estate. Later the bill was
amended by making Nora Elmore Lung, a step-daughter of
the deceased, and Thomas Stotler, a tenant, parties defend-
ant. This step-daughter is one of the appellees in this court,
and as she is the only party whose interest is adverse to
that of appellants, she will in this statement and the fol-
lowing opinion be denominated the appellee. On April 27,
1907, appellee, having answered, filed a cross-bill, alleging
that during the month of August, 1882, the eighty-acre
tract in question was purchased by the deceased from one
Edward T. Morgan for the consideration of $900, and that
at the time of the purchase appellee advanced to said Har-
din the sum of $370, to be used in the purchase of said
land; that the money was received and used by him for that

purpose, with the intention and understanding of both parties that appellee should become a part owner of the premises so purchased; that upon the purchase of the premises the said Hardin, with whom appellee was residing as a stepdaughter, took legal title in his own name and has ever since retained the same.

A demurrer interposed to the cross-bill by appellants was sustained and leave to amend was obtained by the appellee. The amended cross-bill alleges, among other things, that at the time of the purchase of said land Hardin had in his possession and custody, for investment, $370 of appellee's money, which he used in purchasing said land; that he took the title in his own name and held possession of the same, as trustee, for appellee until the time of his death, on February 7, 1907; that he never at any time denied that he had used the money of appellee in buying said land or that he held the title and possession thereof as a trustee of and in trust for appellee, but, on the contrary, repeatedly admitted to appellee and to other persons, from time to time, that he had so used the money of appellee and was holding the title to said land in trust for her; that upon said purchase by said Hardin with the money of appellee, in the manner aforesaid, a resulting trust arose in favor of the appellee, and she thereby became, in equity, seized of 370/900 of said land.

The answer of appellants to the amended cross-bill denied its material allegations. Replications were filed, and upon a hearing before the court on the issues raised by the pleadings a decree was entered finding that on August 11, 1882, the said William Hardin purchased the eighty acres of land in question from Edward T. Morgan for the consideration of $900, and that at the time of said purchase he had in his hands, for investment, the sum of $330 belonging to appellee, which he used in the purchase of said lands; that upon said purchase he took possession of the said eighty-acre tract and continued in possession thereof until

his death. The decree further finds that appellee was the step-daughter of the said William Hardin at the time he received the said sum of money from her for investment; that at the time of his death he was the owner in fee simple of 570/900 of the land so purchased, and that appellee was the equitable owner of 330/900 of said land, the legal title of which was in said Hardin. Appellants bring the record to this court and contend that the circuit court erred in entering the decree in favor of appellee.

D. H. GLASS, HERMAN H. BROWN, and W. H. DIETERICH, for appellants.

D. L. MOURNING, and J. M. LORING, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Disregarding other questions, the proof upon which Nora Elmore Lung relies is not sufficient, in our judgment, to establish a resulting trust in her favor in the land involved in this controversy. It appears from that evidence that during her minority Hon. John C. Bagby, of Rushville, was her guardian. After she reached her majority, and on July 3, 1882, he made his final report, which shows a balance paid to the ward of $367.25. On August 11, 1882, William Hardin purchased the eighty acres in question from Edward T. Morgan for the sum of $900. Hardin was the husband of appellee's mother. Mrs. Hardin had been married to one Elmore prior to her marriage to Hardin and appellee was a daughter of the first marriage. At the time of the transactions above mentioned appellee was residing in the family of her mother and step-father. Morgan testified that the agreement for the sale of the land was reached between himself and Hardin upon the land itself; that he received on account of the purchase price of the land a young horse at $75 and a promissory note given by Hugh McClintock for $90.10; that Mr. Hardin told him to come

to Judge Bagby's office, in Rushville, as he (Hardin) was going to get some money of Bagby; that they came to town, Mrs. Hardin coming along, and the balance of the money was paid to him in town and the deed was there executed.

It appears that on August 11, 1882, Hardin and wife executed to John C. Bagby a mortgage on the eighty-acre tract in question to secure Hardin's promissory note for the principal sum of $404.65. This sum added to the amount of the McClintock note and the price of the young horse makes a total of $569.75, which deducted from the purchase price leaves a balance of $330.25. The court found that Hardin paid this balance with appellee's money, and that as a consequence thereof a trust resulted in her favor, making her the equitable owner of 330/900 of the eighty-acre tract.

C. A. Lance testified that he had been acquainted with Hardin in his lifetime, and that Hardin had said to him that he did not have any property at the time he married Mrs. Elmore and that she had the money with which he purchased this land. Frank Hardin, a son of the deceased, testified that he was fourteen years of age at the time the land was purchased from Morgan; that his father gave Morgan a colt and a promissory note and mortgage against Hugh McClintock to apply on the land, "and got part of my half-sister's money and paid on it, and I think borrowed the rest of Judge Bagby." He was then asked whether "they received all of Nora Elmore's money," and replied: "I couldn't say whether they got all of it,—about $300 I guess."

We have above stated the substance of the competent evidence offered on the part of Mrs. Lung. The testimony of her husband was also taken but was excluded on the ground that he was incompetent, and the court's ruling in that respect is not here questioned.

Counsel for the defendants in the cross-bill then offered the testimony of Carrie Stambaugh, who was one of such

defendants and who is one of the appellants. Her testimony was objected to on the ground that she was incompetent, and the court stated that he would hear the evidence subject to the objection. Thereupon she testified that she was a daughter of William Hardin, and that prior to her marriage, eleven years before, she had resided with her father's family; that she had heard Nora Elmore's money discussed at the home of her parents; that her father said he had owed this money to Nora but that he had paid it; that he had paid to the Elmore children all the money that he owed them, except $60 or $65 which he owed to Tom, a brother of Nora; that he owed this money to Tom by reason of the fact that he had borrowed of him the same as he had borrowed of Nora, and that the amount he had borrowed of Nora was something over $300. Thereupon the attorneys for complainant in the cross-bill withdrew all objection to the testimony of Mrs. Stambaugh. It is upon the proof which we have thus summarized that the question whether a resulting trust existed is to be determined.

The presumption from the fact that the deed was executed to Hardin is that he purchased the land with his own money. (*Reeve* v. *Strawn,* 14 Ill. 94; *Francis* v. *Roades,* 146 id. 635.) "The rule is well settled that where the evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon theories other than that of the existence of an implied or resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing the trust." *McGinnis* v. *Jacobs,* 147 Ill. 24; *Strong* v. *Messinger,* 148 id. 431; *Goelz* v. *Goelz,* 157 id. 33.

There is not the slightest evidence in this record that William Hardin had possession of the money of his step-daughter at any time prior to the day on which the deed to him was made, or that he at any time held it as agent or trustee or in any other fiduciary capacity. The averment of the cross-bill to the effect that Hardin had appellee's money

in his possession and custody for investment finds no support whatever in the proof. The evidence of Mrs. Stambaugh was incompetent. Counsel for Mrs. Lung having withdrawn in the circuit court their objection thereto, now insist that it shows that Hardin received appellee's money. If that be true it also shows that he borrowed the money. If the money was loaned to him no trust resulted. If, however, Mrs. Stambaugh's testimony be disregarded, it is impossible to determine from the undisputed proof made by appellee whether Hardin borrowed the money or whether he came into possession of it as an agent or trustee of appellee. In this uncertain state of the proof we do not think it can be said that the cross-bill was proven.

The decree will be reversed and the cause will be remanded to the circuit court, with directions to dismiss the cross-bill as amended for want of equity, and for further proceedings consistent with the views herein expressed.

*Reversed and remanded, with directions.*