MEAGHER, Trustee, Respondent, v. HARRINGTON, Administratrix, Appellant.

(No. 6,056.)

(Submitted February 16, 1927. Decided March 12, 1927.)

[254 Pac. 432.]

*Trusts — Corporations — Officers — Constructive Trusts—Complaint—Sufficiency—Burden of Proof—Evidence—Books of Account—When Inadmissible.*

Trusts—Resulting Trust—Statute Applicable to Personal Property.
1. *Held,* that the provision of section 6785, Revised Codes of 1921, declaring that a trust is presumed to result in favor of a person by or for whom the consideration for the transfer of real property is paid by another, being but declaratory of the common law under which the rule applied as well as the purchase of personal property, is controlling also where the property in question is personal.

Same—Constructive Trust—Intention to Create Trust Immaterial.
2. The constructive trust declared by section 7887, Revised Codes, is based upon the fundamental idea of fraud or wrongdoing in the trustee, independently of any actual or presumed intention to create a trust, while in all species of resulting trusts, intention is an essential element.

Same—Corporations—Officer Purchasing Property in Own Name With Corporate Funds—Constructive Trust.
3. The fiduciary relationship of principal and agent exists between a corporation and its general manager and other officers and agents having control over its affairs, and where any such agent purchases property in his own name with fiduciary funds, equity assumes that he intended to act in accordance with his fiduciary duty, and a constructive trust arises without proof of intention to violate his fiduciary obligation.

Same—Constructive Trust—Complaint—Sufficiency.
4. Since plaintiff in an action to have defendant decreed a constructive trustee because of purchase of property in his own name with fiduciary funds need not prove the latter's intention in the premises, he need not allege it; nor need he allege that title was taken for or on behalf of the *cestui que trust,* constructive trusts being always established *in invitum;* nor that the consideration was paid either by or for him, it being sufficient to show that fiduciary funds formed the consideration.

<hr />

2.  See 26 R. C. L. 1232.
3.  Corporation's right to trust where its money is fraudulently used by officer in purchase or improvement of property, see note in 43 A. L. R. 1425.

[78 Mont. 457.]

Same—Constructive Trust—Complaint—Time of Payment Immaterial.

5. The rule, applicable where a resulting trust is sought to be established, requiring plaintiff to allege that the payment was made at or before the time title was taken by defendant, does not apply in cases of constructive trusts where the latter in violation of a fiduciary relation employs funds of his *cestui que trust* for the purchase of property in his own name; in such a case plaintiff may pursue the trust fund through its various transmutations into new investments, and it is immaterial whether the money was used at the time of or before the purchase or subsequently thereto.

Evidence—Books of Account—What Showing Prerequisite to Admissibility—When Oral Testimony as to Contents Inadmissible.

6. Books of account, constituting, as they do, an exception to the admission of hearsay evidence, are not admissible in evidence unless a proper foundation has been laid, and where such books are improperly admitted, testimony as to their contents is also inadmissible; hence, in the absence of a showing that the books were honestly and correctly kept, or that entries to which a witness referred were true and correct, the court erred in overruling objections thereto.

Trusts — Establishment of Constructive Trust.— Proof must be Practically Free from Doubt.

7. In an action by a trustee of a bankrupt corporation to recover shares of the capital stock of another company alleged to have been purchased by the president of the former with its funds, evidence *held* insufficient to support a judgment in favor of plaintiff, under the rule that where a constructive (or resulting) trust is sought to be enforced, the proof must be clear, convincing and practically free from doubt, and when it is capable of reasonable construction upon any other theory than that of the existence of such a trust, it will be held insufficient.

Same—Constructive Trust—Burden of Proof on Defendant, When.

8. Plaintiff in an action to establish a constructive trust must make at least a *prima facie* showing that the funds which went into the purchase of the property in question were not intended either as a loan or a gift; when such a showing is made the burden rests upon defendant to overcome it.

---

[1]. Trusts, 39 **Cyc.**, p. 25, n. 72, 73, 74; p. 104, n. 12; p. 124, n. 37; p. 125, n. 48; p. 170, n. 17, 20.

[2] Trusts, 39 **Cyc.**, p. 105, n. 19, 20; p. 169, n. 10.

[3] Corporations, 14a **C. J.**, sec. 1866, p. 99, n. 71, 74. Trusts, 39 **Cyc.**, p. 148, n. 82; p. 153, n. 13; p. 182, n. 66; p. 188, n. 79.

[4] Trusts, 39 **Cyc.**, p. 623, n. 60.

[5]. Trusts, 39 **Cyc.**, p. 128, n. 79; p. 129, n. 81; p. 182, n. 66; p. 528, n. 62; p. 622, n. 55; p. 623, n. 60.

[6] Evidence, 22 **C. J.**, sec. 223, p. 237, n. 72; sec. 1034, p. 862, n. 34; sec. 1035, p. 864, n. 50; sec. 1040, p. 867, n. 95.

[7] Trusts, 39 **Cyc.**, p. 160, n. 62; p. 166, n. 89; p. 167, n. 91, 94; p. 168, n. 99; p. 193, n. 8.

[8] Trusts, 39 **Cyc.**, p. 152, n. 9; p. 153, n. 10, 15; p. 191, n. 2; p. 192, n. 3.

6. See 10 **R. C. L.** 1174.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by Charles E. Meagher, as trustee of the Heilbronner Company, against Julia Harrington, as administratrix of the estate of I. A. Heilbronner, deceased. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

*Messrs. Kremer, Sanders & Kremer* and *Mr. H. D. Carmichael,* for Appellant, submitted a brief; *Mr. Louis P. Sanders* and *Mr. Carmichael* argued the cause orally.

At the threshold of our argument we invite attention to the established rule that where a trust is sought to be impressed upon personalty, the rules of pleading and the *quantum* of proof are the same as those where a trust is sought to be enforced with respect to real estate. (3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1038, pp. 2353, 2354; *Thompson* v. *Bank of California,* 4 Cal. App. 660, 88 Pac. 987; *Bacon* v. *Grosse,* 165 Cal. 481, 132 Pac. 1027; *Lefkowitz* v. *Silver,* 182 N. C. 339, 23 A. L. R. 1500, note, 109 S. E. 56.) There is another rule of evidence equally applicable whether it be sought to enforce a resulting or a constructive trust. The plaintiff must establish his case by evidence so clear, convincing and indisputable as to amount, as this court has held, to proof "practically free from doubt." (*Cleary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546.) The evidence to establish an oral express trust involving personalty should be equally as strong as parol evidence to establish a resulting trust in real property. (*Fee* v. *Wills,* 65 Colo. 348, 176 Pac. 829.) It must be of such a character as to leave no reason for reasonable doubt. (*Crowley* v. *Crowley,* 131 Mo. App. 178, 110 S. W. 1100; *Pitts* v. *Weakley,* 155 Mo. 109, 55 S. W. 1055; *Chambers* v. *Richardson,* 57 Ala. 85; *Forrester* v. *Scoville,* 51 Mo. 268; *Carter* v. *Carter,* 14 N. D. 66, 103

N. W. 425.) In *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113
Pac. 1127, this court holds to the *quantum* of proof sustained
by the overwhelming weight of authority, and lays stress upon
the essential of proving the trust so clearly as ''to take it
out of the realm of conjecture or speculation.''

The complaint is insufficient.  (a) To allege a resulting
trust it is necessary to set forth that the consideration paid
for the stock was paid by or on behalf of the Heilbronner
Company and the stock acquired taken in the name of I. A.
Heilbronner for the use and benefit of the company.  (*Word*
v. *Moore,* 66 Mont. 550, 214 Pac. 79.)   (b) The complaint
is defective in that it fails to allege that the purchase money
was paid before or at the time of the purchase of the stock.
(*Long* v. *King,* 117 Ala. 423, 23 South. 534.)   (c) It is de-
fective because it fails to allege that there was an intention
to create a trust.  (*Semple* v. *Semple,* 90 Fla. 7, 105 South.
134; see, also, *Word* v. *Moore, supra,* which in effect holds
that intent must be alleged.)

The evidence is insufficient to establish a resulting trust,
even if one had been sufficiently alleged.  (a) In order
to establish a resulting trust predicated upon the fact
that where title to property is taken by one person and
the consideration therefor is paid by or for another, a trust
results in favor of the person by or for whom such pay-
ment is made, it must be proved that it was the intent
of the party furnishing the consideration to acquire title
to the property.  (*German* v. *Heath,* 139 Iowa, 52, 116
N. W. 1051; *Lezinsky* v. *Mason Malt Whiskey Distilling
Co.,* 185 Cal. 240, 196 Pac. 885; *Koehler* v. *Koehler* (Ind.
App.), 121 N. E. 450; *Harris* v. *Harris,* 178 N. C. 7, 100
S. E. 125; *Becker* v. *Howard,* 75 Wis. 415, 44 N. W. 755.)
(b) There is no evidence herein that the consideration was
paid at or before the time that the legal title passed to I. A.
Heilbronner.  (*Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240;
*Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127; *Mac-*

*Ginnis Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436.; *Feeley* v. *Feeley,* 72 Mont. 84, 231 Pac. 908.)

The complaint is insufficient to warrant the court to grant relief upon the theory of a constructive trust. It is essential to the creation of a trust of this character that the use of the principal's money by the agent be unauthorized or fraudulent. There is no averment in the complaint to show whether the purchases of stock in I. A. Heilbronner's name were with or without the knowledge or consent of the company, or whether the use by him of the company's money in payment of the purchase money was or not a wrongful and fraudulent misappropriation of the same, or whether the purchase money paid for the stock was paid before, at the time of or after the delivery of the stock. (*Long* v. *King,* 117 Ala. 423, 23 South. 534; *Jackson* v. *Landers,* 134 Ind. 529, 34 N. E. 324; *Perreau* v. *Perreau,* 12 Cal. App. 122, 106 Pac. 728; *Noble* v. *Noble,* 73 Cal. App. 504, 239 Pac. 51.)

The evidence is insufficient to establish a constructive trust even if one had been sufficiently alleged. (*Streeter* v. *Gamble,* 298 Ill. 332, 23 A. L. R. 1485, 131 N. E. 589; *Dodge* v. *Thomas,* 266 Ill. 76, Ann. Cas. 1915C, 1097, 107 N. E. 261; *Stephens* v. *St. Louis Union Trust Co.,* 260 Ill. 364, 103 N. E. 190; *Stambaugh* v. *Lung,* 232 Ill. 373, 83 N. E. 922.)

*Mr. John K. Claxton* and *Messrs. Lamb & Malloy,* for Respondent, submitted a brief; *Mr. Edwin M. Lamb* argued the cause orally.

Insufficiency of the complaint: Respondent's complaint was drawn up in conformity with the general principle of equity announced in 30 Cyc. 118 and 26 R. C. L., section 64, which finds expression in section 6785, Revised Codes of 1921, as follows: "When the transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." This court has on

numerous occasions had occasion to construe the provisions of the foregoing section, and also to apply and approve of the foregoing general equitable principle herein first set forth. (See *Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240; *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127; *Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546.)

Appellant asserts that the complaint is fatally defective in that there is no allegation therein contained alleging that the consideration paid for the purchase of the stock was paid by "or on behalf" of the Heilbronner company, and, further, that it should have been alleged that the stock acquired in the name of I. A. Heilbronner was "for the use and benefit of the company." Appellant relies upon the case of *Word* v. *Moore,* 66 Mont. 550, 556, 214 Pac. 79, but a reading of this case clearly discloses that it has no application to the case at bar.

The complaint is further stated to be defective in that it fails to allege that the consideration was paid "before or at the time of the purchase of the stock." Clearly, such a rule has no application here, where the ultimate facts are pleaded as disclosed by the following excerpts from the complaint: "While the said I. A. Heilbronner was the president and general manager of the Heilbronner company, a corporation, as aforesaid, the said I. A. Heilbronner purchased with and paid for with the money and funds of the said the Heilbronner company, a corporation, the following described personal property, to-wit: * * * That in the purchase of said personal property above described, the said I. A. Heilbronner, instead of having the certificates of stock issued in the name of the Heilbronner company, a corporation, obtained and caused the same to be issued to him in his own name, that of I. A. Heilbronner."

Again, it is claimed the complaint is defective because it fails to allege that there was any intention to create a trust. This contention is effectively disposed of by a reference to the case of *Lezinsky* v. *Mason Malt Whiskey Distilling Co.,*

185 Cal. 240, 196 Pac. 885, 890, a case cited in appellant's brief, and the quotation from 3 Pomeroy's Work on Equity Jurisprudence, section 1031. "In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as the beneficial owner under the circumstances." (*Lynch* v. *Herrig, Eisenberg* v. *Goldsmith, Clary* v. *Fleming, supra.*) It is academic that it is not necessary to plead a presumption of law.

It is asserted by appellant that it is necessary to prove, in order to establish a resulting trust, that where the consideration for the transfer of property is paid by one person and the title taken in the name of another, that "It must prove that it was the intent of the party furnishing the consideration to acquire title to the property." Regardless of what the rule may be elsewhere, it is well settled in this state that where a transfer of property is made to one person, and the consideration thereof is paid by another a trust is presumed to result in favor of the person by whom such payment is made. Manifestly, it is unnecessary to prove something that the law presumes. The foregoing rule is declared by section 6785, and is uniformly declared to be the rule by this court. (*Lynch* v. *Herrig, supra; Eisenberg* v. *Goldsmith, supra; Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714; *Wilson* v. *Wilson,* 64 Mont. 533, 543, 210 Pac. 896; see, also, *Lezinsky* v. *Mason Malt Whiskey Distilling Co., supra;* 3 Pomeroy's Equity Jurisprudence, secs. 1031, 2357; Perry on Trusts, secs. 126, 214, 215.)

Apprehending that it may be contended by appellant that respondent's proof was insufficient, in that we did not negative the fact that possibly the Heilbronner corporation had authorized Heilbronner to use its funds, or that the corporation was indebted to I. A. Heilbronner in an amount equal

to or in excess of the purchase price of the stock in question, we desire to call the court's attention to the following rule of law: "As a general rule the law will not presume a resulting trust except in a case of necessity, and the burden of establishing such a trust, as against the holder of the legal title, is on the party who asserts it. In case of a resulting trust arising from payment of the purchase money by one person and conveyance to another, the burden of proof, in the first instance, is on the party claiming the trust, to prove that the purchase was made with money or assets furnished by or belonging to him, and, if it has been only a part payment, to prove the precise amount so used, as well as the total consideration. But where it is shown that the purchase was so made, a resulting trust will, as a general rule, be presumed to arise in favor of the party whose money or assets were so used, this being the rule in some jurisdictions by virtue of statute, and the burden of overcoming such presumption is on the party claiming against the trust." (39 Cyc. 152; *Lezinsky* v. *Mason Malt Whiskey Distilling Co., supra; Root* v. *Kuhn,* 51 Cal. App. 600, 197 Pac. 150.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment declaring a trust and directing defendant to transfer certain certificates of stock to plaintiff, as trustee.

On March 30, 1926, Charles E. Meagher, as trustee of the Heilbronner company, a bankrupt, commenced action to compel Julia Harrington, as administratrix of the estate of I. A. Heilbronner, deceased, to transfer to him, for the benefit of the bankrupt estate, sixty shares of the capital stock of the New Finlen Hotel Company of Butte. The following facts are alleged in the complaint and admitted by answer:

The Heilbronner company was incorporated in 1910 and thereafter, up to the time of his death on June 14, 1925, I. A. Heilbronner was its president and general manager and

had general control and supervision over its affairs. On June 18, 1925, an involuntary petition in bankruptcy was filed against the company and plaintiff was then appointed trustee; he duly qualified and has ever since acted in that capacity. On June 25, 1925, the company was adjudged a bankrupt. On August 6, 1925, defendant was appointed administratrix of the estate of Heilbronner; she duly qualified and entered upon the discharge of her duties. Prior to the commencement of this action plaintiff made demand upon defendant for the transfer to him, as trustee, of the certificates of stock mentioned above, and defendant refused to comply with the demand.

It is alleged in the complaint and denied by the answer, that Heilbronner during all of the times mentioned "exercised complete control of the money and funds of said corporation," and that he "purchased with and paid for, with the money and funds of the * * * company," the shares in question; that, instead of having the certificates issued to the company, he "obtained and caused the same to be issued in his own name"; and that during his lifetime Heilbronner held, and the defendant now holds, these shares "in trust" for the company. In addition to the denials indicated above, the defendant affirmatively alleged that Heilbronner purchased the stock with his own funds and "was the owner, in possession and entitled to the possession thereof" for "several years prior to the commencement of this action"; that he "exercised exclusive ownership" over them and kept them in the office of the company; and that they stood of record on the books of the hotel company in his name. She further alleged that all of these facts were known to the officers of the company, and notwithstanding such knowledge the company at no time made any "claim of any kind or character whatsoever" thereto; that by reason of such failure the company and this plaintiff have been guilty of laches and the plaintiff is estopped to claim any right, title or interest therein.

Replying to the answer, plaintiff alleged that he had no knowledge or information sufficient to form a belief as to the truth of the allegations thereof, and therefore denied the whole thereof. No question is raised as to its sufficiency.

The cause was tried to the court without a jury. But three witnesses were called by the plaintiff. When the first witness was placed on the stand, defendant objected to the introduction of any testimony on the ground that the complaint did not state facts sufficient to constitute a cause of action, which objection was overruled. The testimony in its entirety is brief and is substantially as follows:

W. J. Walsh merely testified that he was an accountant for plaintiff; that he had made search through the effects of the company for a check dated May 15, 1923, issued by the company, without success.

J. E. Woodard, president of the Metals Bank & Trust Company of Butte, testified that he was treasurer of the New Finlen Hotel Company in 1923 and 1924; that he knew that Heilbronner was a stockholder in the hotel company, and that T. N. Brogan represented him in handling the subscription to stock and the books of the hotel company. He was shown a number of checks, but stated that he knew nothing about them. Over the objection of the defendant that the same was irrelevant, incompetent and did not tend to prove any issue in the case, the witness was permitted to testify that he was the J. E. Woodard, treasurer, payee named in one of the checks.

T. N. Brogan testified that he was "in charge of the trust company"; that in 1923 and 1924 he was the "accountant in charge of the construction books" of the hotel company. He was then asked: "Have you the books of the bank showing the transaction, if any, had between I. A. Heilbronner and the New Finlen Hotel Company?" His answer was, "Yes, sir." He was then shown five checks bearing dates from January 23, 1923, to February 25, 1924, from the Heilbronner company to the hotel company or J. E. Woodard,

treasurer, each for $1,000, and asked the question: "Does
your books of the bank show the receipts of those checks or
similar ones?" To this question the objection stated to the
question put to Woodard above was interposed, with the addi-
tion that the complaint does not state facts sufficient to con-
stitute a cause of action, which objection was overruled. On
being asked to turn to the book showing the account, the wit-
ness produced the "cash-book" of the hotel company, but was
not permitted to testify therefrom on the ground that no
foundation had been laid for the introduction of testimony as
to the contents of the book. The witness was then questioned,
and answered as follows:

"Q. Who made these entries? A. Most of them were made
by me. Q. Those not made by you, were they made under
your supervision? A. Yes, sir. Q. You are acquainted with
all of the records contained in that book? A. Yes, sir. Q.
They were made at the time of the transactions? A. Yes,
sir. Q. Now, then, I renew the question, and ask you if
they show a transaction with respect to the purchase of sixty
shares of stock by I. A. Heilbronner?"

Counsel for defendant thereupon objected on the ground
that no proper foundation had been laid for the introduction
of any testimony with regard to the book, and for the fur-
ther reason that the question was leading. This objection was
overruled.

The page of the book said to show the transaction was then
admitted in evidence over the objection of defendant and the
witness permitted to read therefrom such items as, "April
4th, I. A. Heilbronner, $1,000," and explain that it referred
to the receipt of cash from Heilbronner. As to the date of
each check tendered him, he showed a corresponding entry
of cash received from Heilbronner for stock subscription. As
to the missing check of May 15, 1923, he produced the origi-
nal deposit slip of the hotel company, from the files of the
Metals Bank, and, over the objection of the defendant, this
was admitted, and he explained its connection with an entry

in the "cash-book." Asked if the book admitted in evidence showed the amount of the Heilbronner subscription, he replied: "This doesn't show it all. I have a record that does show it." The witness then produced a book which he designated "the stock ledger" of the hotel company. The only question asked him concerning this book was, "Are you familiar with that?" to which he replied, "Yes, sir." Over the objection that no proper foundation had been laid for testimony concerning the contents of this book, the witness was permitted to testify that it showed that Heilbronner was issued two certificates, giving the numbers and the amount of stock, totaling sixty shares. The checks were then admitted in evidence, over the objection of defendant. Plaintiff rested.

Thereupon counsel for defendant stated that defendant rests and then moved the court to dismiss on the grounds that the complaint does not state facts sufficient to constitute a cause of action; that plaintiff failed to prove the material allegations of the complaint by competent, sufficient and substantial evidence, and particularly by that clear, convincing and satisfactory evidence required to establish a trust; that the evidence establishes laches and does not show that Heilbronner did not pay for his stock with his own funds or that the money was not used with the knowledge and consent of the directors of the company. This motion was denied and the cause taken under advisement.

The court made and filed findings in accordance with the admitted allegations of the complaint, and in addition thereto found that Heilbronner purchased the stock "in the year 1923," and paid the full purchase price out of the account and moneys of the company. From these findings the court concluded, as a matter of law, that the relation borne by Heilbronner to the company was fiduciary and precluded Heilbronner from acquiring property rights antagonistic to the company; that, as the record shows no intention to create or to hold the stock for the company, a constructive, and not

a resulting, trust "arises *in invitum* to work out justice in the most efficient way." Judgment was entered in conformity with the findings of fact and conclusions of law, and from this judgment defendant has appealed.

Counsel have assigned twenty-five specifications of error, which, however, present but three questions: (1) Did the court err in overruling the objection to the introduction of any testimony, on the ground that the complaint was insufficient; (2) did the court err in admitting the books of account and testimony concerning the same, on the preliminary showing made; and (3) is there sufficient evidence in the record to support the judgment?

1. Defendant's criticism of the complaint is that it does not allege that Heilbronner intended to take and hold title for the use and benefit of the company, nor that the consideration was paid "by or on behalf" of the company, nor that the consideration was paid at or before the time title to the stock passed to Heilbronner.

A trust is either voluntary or involuntary, the latter being created by operation of law. (Secs. 7878, 7880, Rev. Codes 1921.) Involuntary trusts are either resulting or construc-

[1] tive trusts. Section 6785, Revised Codes of 1921, declares that "when a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." The trust presumed under such circumstances is a resulting trust. (*Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240; *Eisenberg* v. *Goldsmith*, 42 Mont. 563, 113 Pac. 1127; *Marcellus* v. *Wright*, 51 Mont. 559, 154 Pac. 714; *MacGinniss* v. *Hinderager*, 63 Mont. 172, 206 Pac. 436; *Wilson* v. *Wilson*, 64 Mont. 533, 210 Pac. 896; *In re Estate of Deschamps*, 65 Mont. 207, 212 Pac. 512; *Feeley* v. *Feeley*, 72 Mont. 84, 231 Pac. 908.) The statute is but declaratory of the common law (*Lynch* v. *Herrig*, above; *Eisenberg* v. *Goldsmith*, above), and the common-law doctrine

applies as well to the purchase of personal property (39 Cyc.
125; 3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1038).

Again, section 7887, Revised Codes of 1921, provides that
[2] "one who gains a thing by fraud, accident, mistake, un-
due influence, the violation of a trust, or other wrongful act, is,
unless he has some other or better right thereto, an involun-
tary trustee of the thing gained, for the benefit of the per-
son who would otherwise have had it." Here a constructive
trust is declared. The controlling thought running through
the statute and all decisions declaring a constructive trust
is that of fraud or wrongdoing amounting to constructive
fraud. (*Largey* v. *Leggat,* 30 Mont. 148, 75 Pac. 950; *Eisen-
berg* v. *Goldsmith,* above; *MacGinniss* v. *Hinderager,* above.)
Such trusts exist independently of any actual or presumed
intention to create a trust and are generally thrust upon the
trustee for the purpose of working out a remedy, while in
all species of resulting trusts, intention is an essential ele-
ment, although never expressed in words of direct creation.
(3 Pomeroy, above, sec. 1031; 26 R. C. L. 1232.)

The fiduciary relationship of principal and agent exists be-
[3, 4] tween a corporation and its general manager and other
officers and agents having control over its affairs (3 Fletcher's
Cyc. of Corporations, Chap. 42; *Shearer* v. *Barnes,* 118 Minn.
179, 136 N. W. 861; *Wells, Fargo & Co.* v. *Robinson,* 13 Cal.
134), and when one occupies a fiduciary position yet pur-
chases property in his own name with fiduciary funds, "equity
assumes that he intended to act in accordance with his fidu-
ciary duty, although in the majority of such instances the
actual intention is undoubtedly to violate the duty," and,
although this class of trusts has this one element—the assump-
tion of intention—in common with resulting trusts, "it differs
from them in every other respect and belongs, on princi-
ple, to the class of constructive trusts"; it "arises inde-
pendently of any imputation of fraud, and without requiring
any proof of an intention to violate the existing fiduciary ob-
ligation" (3 Pomeroy, above, secs. 1044, 1049). As such
presumed intention need not be proved, it need not be al-

leged, and as it is presumed contrary to the actual intention of the trustee, it likewise need not be alleged that the title was "taken for or on behalf of" the *cestui que trust;* such a trust is always established *in invitum.* (*Millard* v. *Green,* 94 Conn. 597, 9 A. L. R. 1610, 110 Atl. 177; *Lezinsky* v. *Mason Malt Whiskey Distilling Co.,* 185 Cal. 240, 196 Pac. 885.)

What is said in *Word* v. *Moore,* 66 Mont. 550, 214 Pac. 79, respecting pleading, applies to the allegations concerning such a *resulting* trust as was there sought to be established, and has no application to the instant case. As to the basis of such a constructive trust *in invitum* as the complaint sought to have declared is the wrongful use of fiduciary funds in the hands of the purchaser, it was not necessary to allege that the consideration was paid either by or for the *cestui que trust;* that such funds formed the consideration for the transfer was sufficient.

. As to the criticism that the complaint does not allege that [5] the payment was made at. or before the time title was taken by Heilbronner, it is indispensable that such fact be alleged and proved in order to establish a resulting trust from the payment of the consideration by one person and the taking of title in another. (*Eisenberg* v. *Goldsmith,* above; *Mac-Ginniss* v. *Hinderager,* above; *Watkins* v. *Carter,* 164 Ala. 456, 51 South. 318; *Butts* v. *Cooper,* 152 Ala. 375, 44 South. 616; *Scribner* v. *Meade,* 10 Ariz. 143, 85 Pac. 477; *O'Connor* v. *Irvine,* 74 Cal. 435, 16 Pac. 236.)

In such cases, of course, the voluntary advancement of funds by or for one party, after another has secured title to property, cannot result in a declaration of trust, whatever other remedy may exist; but where a trustee under a then existing fiduciary relationship to another employs the funds of his *cestui que trust* for the purchase of property in his own name, "a trust originates in the right to pursue the trust fund through its various transmutations into the new investment, and it is immaterial whether the money of the *cestui que trust* was used at the time of or before the purchase or

subsequently thereto.'' (*Haney* v. *Legg,* 129 Ala. 619, 87
Am. St. Rep. 81, 30 South. 34; see, also, *Case* v. *Collins,* 37
Ind. App. 491, 76 N. E. 781; *Preston* v. *Moore,* 133 Tenn.
247, L. R. A. 1916C, 578, 180 S. W. 320.)

We are of the opinion that the rule announced in *Haney* v.
*Legg,* above, in such a case as the one before us, is consonant
with equity and justice and should be adopted; if in fact an
officer of a corporation having control over its funds, without
the knowledge or consent of the corporation and other offi-
cers diverts those funds to his own use, the corporation should,
in equity and good conscience, be permitted to follow those
funds through transmutation into any other form of property,
so long as the rights of innocent third parties, without no-
tice, have not intervened, whether the funds were used in
the initial purchase of the property or were used in payment
of property purchased at a prior time so long as the prop-
erty into which the funds were traced was acquired by the
use of fiduciary funds. It was not, therefore, necessary in
such a case as this to allege that the money was paid at, or
before, the time Heilbronner purchased the stock.

We therefore hold that the complaint states a cause of ac-
tion on the theory of a constructive trust *in invitum.*

2. The next contention is that the court erred in permit-
ting plaintiff to connect up the checks received by the hotel
company with the purchase of stock by Heilbronner, if this
was accomplished, by the introduction of the books of the
hotel company and testimony concerning their contents, over
the objection that no proper foundation was laid for the in-
troduction of this testimony. The preliminary proof fully
appears from the above statement.

The contents of books of account are not primary evidence
[6] of the transaction recorded, and their admission in evi-
dence constitutes an exception to the rule against the admis-
sion of hearsay evidence which has grown up in the prac-
tice through necessity. In order to take this short-cut in
proof, the party offering such books must conform strictly

to the rule regarding the laying of a proper foundation there-for, so often stated by the courts. What is said in *State* v. *Yegen,* 74 Mont. 126, 238 Pac. 603, is pertinent here: "That the rulings admitting the exhibits were erroneous does not admit of doubt. They violated the elementary rule of evidence that, before book entries are admissible, it must be shown that the books were kept in the usual course of business, were kept honestly and correctly, and that the entries were duly made, contemporaneously with the transactions to which they relate." In the absence of such a preliminary showing, such book entries are never admissible. (1 Greenleaf on Evidence, 16th ed., sec. 120; 3 Jones on Evidence, sec. 573; *Ryan* v. *Dunphy,* 4 Mont. 356, Ann. Cas. 1912D, 47, 5 Pac. 324; *Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643; *Gallatin County Farmers' Alliance* v. *Flannery,* 59 Mont. 534, 197 Pac. 996; *Smith* v. *Sullivan,* 58 Mont. 77, 190 Pac. 288, and cases cited in 2 Ency. of Evidence, 629.) When the books themselves are not properly admitted, testimony as to their contents is inadmissible, "since a party cannot do indirectly what he cannot do directly." (*McLean* v. *Rice,* 63 Mont. 556, 208 Pac. 252.)

Proof of at least one essential and important portion of the foundation to be laid was entirely lacking; nowhere in the testimony of the witness Brogan is there an intimation that the books were "honestly and correctly kept," or that the entries to which he referred were true and correct. In the absence of such a showing, the oath of the witness is futile and his testimony does not establish facts on which a finding may be made, for he only testifies that the book before him contains certain entries without regard to their truth or falsity. The court can no more assume that the entries speak the truth than can it determine a disputed fact upon a statement made in court by a person not sworn as a witness. As no proper foundation was laid for the admission of the books in evidence, all objections to questions based upon their con-

tents were well taken, and the court erred in each instance when such an objection was overruled.

3. It is finally contended that the evidence adduced is insuffi-
**[7]** cient to support the judgment. Eliminating the testimony improperly admitted, this is undoubtedly so. However, as the cause must be remanded for a new trial, we will briefly consider the evidence adduced and that indicated by the record as capable of being produced and the rules of evidence applicable in such cases.

It is fairly established that Heilbronner, while occupying a fiduciary position with the company, purchased the stock in question in his own name, and that, during the period of a year or more which period includes the time of the purchase, the company paid to the hotel company $6,000 by checks; but such proof alone would not suffice to warrant the declaration of a trust such as is alleged in the complaint, or otherwise. There was nothing in the relationship existing between Heilbronner and the company which would render the mere purchase of stock in the hotel company antagonistic to the interests of his *cestui que trust*. There is no testimony in the record showing that Heilbronner had exclusive control over the funds of the company, as alleged in the complaint, or any control over them at all. He was the president and general manager, it is true; but it appears that the company had a treasurer, who was evidently charged with the custody and control of the funds, and who, either personally or by his assistant, signed all checks shown to have been issued by the company; and it is not shown that Heilbronner had any control over this official or exercised any undue influence over him to secure the issuance of the checks; in fact, it does not appear from the record that Heilbronner directed, or had anything to do with, the issuance of the checks.

Such a trust as is here sought to be established arises from the abuse of the fiduciary relation,—the use of fiduciary funds without the knowledge or consent of the *cestui que trust* (3 Pomeroy's Equity Jurisprudence, sec. 1051); if the checks were

issued and delivered to Heilbronner with instruction to pur-
chase the stock for the company and he wrongfully purchased
in his own name, his fiduciary relation would be immaterial;
the trust arising would be the resulting trust from the pur-
chase of property in the name of one with funds of another
(*Swinburne* v. *Swinburne,* 28 N. Y. 568; *Fulton* v. *Jansen,* 99
Cal. 587, 34 Pac. 331; *Heinrich* v. *Heinrich,* 2 Cal. App. 479,
84 Pac. 326); and it would be necessary to both allege and
prove that the consideration was paid at or before the time
title passed. (See cases cited in paragraph 1, above.)

The fact that both the treasurer and assistant treasurer
signed checks would indicate that these officers had knowl-
edge of the transaction, if those checks were, in fact, issued
in payment for the Heilbronner stock, and would give rise to
at least a surmise that the checks were issued in payment
of some other obligation of the company, as, for example,
the purchase of other stock than that issued to Heilbronner.
There is no evidence in the record to show that the company
did not purchase stock of the hotel company independent of
the Heilbronner transaction shown. Again, there may be an
implication, from the issuance of the checks in the manner
shown, that the company in fact loaned the amount to Heil-
bronner for the purchase of the stock.

That the amount of the payments shown by the checks
equaled the purchase price of the stock, if it did so, might
lead to a conjecture or surmise that the checks were issued
in payment for the stock; but a trust cannot be declared on
conjecture or surmise. (*Eisenberg* v. *Goldsmith,* above; *Mac-
Ginniss* v. *Hinderager,* above.) In order to establish either
a resulting or constructive trust, the proof must be clear,
convincing, satisfactory and "practically free from doubt"
(*Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546; *MacGinniss*
v. *Hinderager,* above), and particularly is this so when it is
alleged that fiduciary funds were used for the purchase of
property in the name of one having the custody of such
funds (*Ferris* v. *Van Vechten,* 73 N. Y. 113; *Carlson* v. *Erick-*

*son,* 164 Ala. 380, 51 South. 175; *Cottonwood Bank* v. *Case,* 25 S. D. 77, 125 N. W. 298); and when the evidence does not measure up to the above standard or is "capable of reasonable explanation upon any theory other than that of the existence" of a trust, the trust will not be "held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing it." (*Dodge* v. *Thomas,* 266 Ill. 76, Ann. Cas. 1915C, 1097, 107 N. E. 261; *Stambaugh* v. *Lung,* 232 Ill. 373, 83 N. E. 922; *Graham* v. *Selbie,* 8 S. D. 604, 67 N. W. 831.) The reason for these rules, which require practically the degree of proof in criminal prosecutions, is that the declaration of such trusts is a drastic invasion of property rights, justified only by the desire of the court to do justice and equity between the parties. Pursuant to [8] this attitude of the courts, it has been held that the plaintiff must make at least a *prima facie* showing that the funds were not received as either a gift or a loan (*Woodside* v. *Hewel,* 109 Cal. 481, 42 Pac. 152), and such a rule should be invoked when, as in this case, the evidence on the part of the plaintiff might give rise to a surmise that such a condition of affairs existed. As the plaintiff represents the company such evidence should be available to the plaintiff.

On the other hand, when the plaintiff has made out a *prima facie* case, under the above rules, the burden rests upon the defendant to overcome such a showing. (39 Cyc. 152; *Lezinsky* v. *Mason Malt Whiskey Distilling Co.,* above; *Root* v. *Kuhn,* 51 Cal. App. 600, 197 Pac. 150.)

The competent evidence adduced was clearly insufficient to warrant the judgment.

The judgment is reversed and the cause remanded to the district court of Silver Bow county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.