No. 86-505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

PAUL RUST

        Plaintiff and Respondent,

  vs

JOHN B. KELLY and CHARLOTTE R. KELLY

        Defendants and Appellants.

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Leroy L. McKinnon Judge presiding.

COUNSEL OF RECORD:

    For Appellant:
        W.G. Gilbert, III, Dillon, MT.
        ~~Vincent J. Kozakiewicz, Dillon, Montana~~

    For Respondent:
        Vincent J. Kozakiewicz, Dillon, MT.
        ~~W. G. Gilbert, III, Dillon Montana~~

Submitted on Briefs: March 26, 1987

Decided: August 26, 1987

Filed: AUG 26 1987

*Ethel M. Harrison*
———————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

John and Charlotte Kelly appeal a judgment entered by the District Court of the Fifth Judicial District, Beaverhead County, in favor of plaintiff and respondent, Paul Rust, on his claim for recovery of a loan. We affirm.

Although appellants raise a number of issues on appeal, the following issue is determinative:

Did the District Court err when it held Rust was entitled to full repayment, together with interest, on his investment?

In 1977, John Kelly and Paul Rust were principal owners of "Highland Log Homes," a log home construction and sales company. During 1977, Kelly and Rust agreed to purchase a two-acre tract near Dillon, Montana. They planned to purchase the land, subdivide it and sell it at a profit. The two-acre tract is adjacent to land owned by Kelly.

On April 18, 1977, Rust advanced Kelly $4,000 or one-half of the purchase price of the property. On April 20, 1977, Kelly executed a buy-sell agreement with Richard Rankin for purchase of the property. The buy-sell agreement required that Kelly provide Rankin a $4,000 down payment, with the balance due at a later date. On December 18, 1977, Kelly paid the balance of the purchase price ($4,000) and recorded the deed. Kelly did not include Rust on the recorded deed.

Rust moved from Dillon following his investment in the two-acre tract. Rust did not return to Dillon, but empowered his brother, David Rust, to act as his agent. David Rust testified that on two occasions, in April, 1979 and in the fall of 1980, he offered to purchase the Kellys' half of the two-acre tract. David Rust testified that on both occasions, John Kelly informed him the tract was "already sold." David Rust also testified that on both occasions Kelly offered to

2

reimburse Paul Rust's $4000 investment. At trial, Kelly testified, "[I] never contended that the two acre tract was solely mine without any obligation to Rust." Kelly also stated, "[I] personally felt, because of our joint ventures in these land deals, that Mr. Rust [did] have a moral interest in [the property]."

Plaintiff and respondent Rust brought this action to recover the $4000 investment together with interest. Defendants counterclaimed alleging that Rust abandoned the joint venture. Following a bench trial on May 12, 1986, the court found the parties had entered into a joint venture. The court also found a novation arising from defendant John Kelly's promise to reimburse plaintiff Rust. Finally, the court found defendants had attempted to deprive plaintiff of his interest in the property.

The court ordered the defendants to repay plaintiff Rust the sum of $4000 together with interest from April 18, 1977. Defendants appeal the order of the District Court.

Issue

Did the District Court err when it held Rust was entitled to full repayment, together with interest, on his investment?

Respondent Rust and appellants John and Charlotte Kelly entered into an oral agreement to invest equal amounts of $4,000 toward the purchase of the property. John Kelly and Rust testified they purchased the property to earn a profit.

The District Court found the parties entered into a joint venture when they purchased the property. The parties do not dispute the District Court's finding.

A joint venture is defined as:

> An association of persons with intent,
> by way of contract, express or implied,

3

> to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership or a corporation pursuant to an agreement that there shall be a community of interest among them as to the purposes of the undertaking . . .

46 Am.Jur.2d Joint Ventures, § 1 at 21-22.

In Murphy v. Redland (1978), 178 Mont. 296, 303, 583 P.2d 1049, 1053, three ranchers entered into an agreement to purchase cattle and, upon fattening, to resell the cattle for profit. In Murphy, we stated:

> The parties here were engaged in a "joint enterprise" or "joint venture" looking eventually to their mutual gain. . . . Joint adventurers and joint enterprises are defined on principles of partnerships. Inter se, partners and joint adventurers are obligated as trustees. The common element is the fiduciary relation.

A constructive trust may be imposed by the court in the interests of justice, to redress a wrong or prevent unjust enrichment. Murphy v. Redland, 178 Mont. at 303, 583 P.2d at 1053, citing Bradbury v. Nagelhus (1957), 132 Mont. 417, 427, 319 P.2d 503, 509.

Appellants contend that the court erred when it found a novation between the parties. Specifically, appellants argue that David Rust gave no consideration for John Kelly's offer to repay respondent's $4,000 investment. Secondly, appellants argue that neither Paul nor David Rust accepted Kelly's offer within a reasonable time.

We hold the issue at hand requires an accounting between members of a joint venture. An accounting of a joint venture is equitable in nature. Murphy v. Redland, 178 Mont.

4

at 313, 583 P.2d at 1058; Roundup Cattle Feeders v. Horpstead (1979), 184 Mont. 480, 485, 603 P.2d 1044, 1047.

Section 3-2-204, MCA, provides in pertinent part:

> In equity cases and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless for good cause a new trial or the taking of further evidence in the court below be ordered.

Appellants are required in equity to hold the property in a constructive trust. Murphy, supra. The District Court found that appellants attempted to deprive respondent of the property. Therefore, the District Court properly held that respondent Rust was entitled to full repayment, together with interest on his investment.

After reviewing the record and the findings of the District Court, it is clear that appellants and respondent paid equal amounts of $4,000 toward the purchase of the property at issue. On December 18, 1977, appellants received title to the property and recorded it without including respondent Rust. Further, appellants maintained sole possession of the property since December 18, 1977, to the exclusion of Rust. John Kelly, on two occasions, told Paul Rust's brother David Rust that the property was "already sold" when in fact it was not sold. Finally, John Kelly admitted that Rust had a "moral interest" in the property.

We hold that in equity respondent Rust is entitled to the return of his $4,000 investment together with interest. Appellants have breached their joint venture fiduciary duty owed to Paul Rust. The judgment of the District Court has

accomplished equity.   Therefore, we need not review appellants' contention that the District Court erred when it found novation.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices