No. 88-617

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

CAROLINA GITTO,

        Plaintiff and Appellant,

    -vs-

GUISEPPE GITTO AND KAREN GITTO,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sol & Wolfe; Michael Sol, Missoula, Montana

    For Respondent:

        Tipp, Frizzell & Buley; Thomas W. Frizzell, Missoula,
Montana

---

Submitted on Briefs: April 27, 1989

Decided: August 31, 1989

Filed:

/Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Plaintiff, Carolina Gitto (Mother), filed a complaint in the District Court of the Fourth Judicial District, Missoula County, seeking to impose a trust upon the home of the defendants, Guiseppe (Joe) and Karen Gitto. The District Court, after a non-jury trial, granted judgment in favor of Karen. Mother appeals. We affirm.

The following issues are raised on appeal:

1. When a mother loans money to her son for the construction of the son's family home, is the district court required to impose upon the home a resulting trust in favor of the mother?

2. Is a wife unjustly enriched when, in a dissolution action, she is awarded the family home that was constructed in whole or in part out of funds loaned to her husband by his mother, and, if so, does equity entitle the mother to a constructive trust upon the home?

On December 2, 1972, Joe and Karen Gitto were married in Floral Park, New York. In 1979, the couple moved to Montana, where they purchased a parcel of land on a contract for deed. Shortly thereafter, Joe contacted his mother, Carolina Gitto, who lived in New York, to borrow money for the construction of a home on the Montana property. Mother consented to lend Joe money, which he orally agreed to repay.

From 1979 through 1983, Joe continued to borrow money from Mother. The parties understood that Joe would repay the loans when he obtained steady employment. This understanding was never reduced to writing.

Karen was not a party to the loans. Although she knew that Joe received money from Mother, she herself did not

request any money, nor was she sure how Joe spent the funds he received from Mother.

At one point, Mother sought to secure the loans by asking Joe to place her name on the title to the Montana property. Nothing in the record shows that Joe assented to, or otherwise indicated he would honor, Mother's request. Needless to say, he did not add her name to the deed. Even so, she continued to loan him money.

All in all, Joe borrowed a total of $76,630. During the time he borrowed the money and continuing through the time of this action, Joe's employment picture remained gloomy. He was only sporadically employed; the two heating businesses he attempted to set up ended in failure.

Joe's home life was not much better. The record reflects a tumultuous marital relationship. Joe displayed a violent temper, which he occasionally exhibited by destroying household furnishings. Due in part to Joe's destructive tendencies, the home in question had a value of only $45,000 at the time of this action.

Joe and Karen separated in 1981, then reconciled. In 1985, Karen petitioned to dissolve the marriage. Slightly over one month later, Mother filed a complaint against both Joe and Karen, alleging that the loans were due and owing and seeking to impose a trust on the family home. The District Court granted Mother's motion to consolidate the two actions.

On December 15, 1986, the dissolution trial was held. Only Karen appeared at the hearing. The District Court awarded her the custody of the couple's minor child. The court also granted her the family home, finding that she required the home as a residence for herself and the child. Karen was ordered to pay any debts she had incurred in the marriage, with the exception of any claim of debt on the family home, which the court found to be free of mortgage

indebtedness. The court ordered Joe to pay "his own debts incurred by him."

A non-jury trial on Mother's complaint was held on July 20, 1987. On March 29, 1988, the court issued its findings of fact and conclusions of law, opinion and order. The court held that the $76,630 constituted loans, not gifts, from Mother to Joe, but that equity would not be served by requiring Karen to repay the loans. Consequently, the court refused to impose either a constructive or resulting trust on the property. From this order, Mother appeals.

The remedies of constructive and resulting trusts are equitable in nature. The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs the appellate court to review and determine questions of fact as well as questions of law. Although this statute appears to provide this Court with broad powers of review, we continue to defer to the trial court's judgment in those cases presenting close questions of fact. We will not disturb the district court's factual findings unless the record establishes a decided preponderance of the evidence against them. Rase v. Castle Mountain Ranch, Inc. (Mont. 1981), 631 P.2d 680, 684, 38 St.Rep. 992, 996.

Before we begin our discussion regarding whether the District Court erred in failing to impose an involuntary trust on the home, we note that the present case involves a series of money transactions between a mother and son. Generally, transfers of property between close relatives are presumed to be gifts. Peterson v. Kabrich (1984), 213 Mont. 401, 407, 691 P.2d 1360, 1364; Platts v. Platts (1959), 134 Mont. 474, 480-81, 334 P.2d 722, 727. In this case, however, the District Court found that Mother successfully rebutted the gift presumption, a finding that the evidence in the record amply supports. The following discussion is therefore

based on the conclusion that the transfers between Mother and Joe constituted loans, not gifts.

Montana law recognizes two general categories of trusts: voluntary and involuntary. Voluntary trusts arise by express agreement of the parties. Involuntary trusts, on the other hand, arise independently of any express contract. Lynch v. Herrig (1905), 32 Mont. 267, 274, 80 P. 240, 242. Because involuntary trusts are not dependent upon an express agreement, they may be proven by parol evidence. The Statute of Frauds plays no part in the finding of an involuntary trust. Campanello v. Mercer (1951), 124 Mont. 528, 531, 227 P.2d 312, 314; Feeley v. Feeley (1924), 72 Mont. 84, 92, 231 P. 908, 910.

Within the category of involuntary trusts, two subclasses exist: resulting trusts and constructive trusts. Mother argues that the District Court erred in failing to impose either one or the other of these trusts upon the home awarded to Karen in the dissolution decree.

A resulting trust, also known as a purchase-money trust, arises only in certain narrowly defined circumstances, which have been codified by statute as follows:

> When a transfer of real property is made to one person and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.

Section 72-24-104, MCA.

A resulting trust exists only when one party provides the consideration for the transfer of property. If A gives money to B for the purchase of real estate and B puts the title to the land in his name, presumably the parties intend that B will merely hold the title in trust for A, and A will retain the beneficial use of the property. See Meagher v. Harrington (1927) 78 Mont. 457, 469-70, 254 P. 432, 435-36;

<u>Lynch</u>, 32 Mont. at 274, 80 P. at 242. Likewise, if A gives money to B for the purchase of personal property, and B takes title to the personal property in his name, B holds the title in trust for A. <u>Meagher</u>, 78 at 469-70, 254 P. at 435. However, if A gives money to B for the purpose of improving property owned by B, a resulting trust does not arise. As explained by a leading authority:

> If B has contracted for the purchase of land and entered into possession, and A thereafter, but before B gets a deed, pays for the construction of a house on the land, A has not paid the price of the equitable property interest which B then owns. A has merely added to the value of that interest, and the law does not infer an intent that B is to have an equitable interest by way of trust. <u>A fortiori</u>, if the improvement paid for by A comes after B has obtained a deed, there is no resulting trust presumed for A. The price of the land has already been paid by B. A is merely adding to the value of realty which is owned by B in fee simple absolute.

G. Bogart, § 455, at 661-62 (rev. 2d ed. 1977).

In the present case, Joe and Karen purchased the underlying real property on a contract for deed from Joe's aunt, Sally Travanto. The funds advanced by Mother were not intended to be, nor were they actually, used for the purchase of real property. Rather, Joe used the money to construct a house on the land. Because the parties applied the funds only to improve the underlying real property, the District Court did not err in refusing to impose a resulting trust on the home.

Unlike a resulting trust, a constructive trust may be imposed in a wide variety of circumstances. While a resulting trust is said to be "intent enforcing," a constructive trust is "fraud rectifying." Bogart, § 451 at 611. A constructive trust may be imposed regardless of the

intent of the parties. It is a remedy created by operation of law to prevent the unjust enrichment of one party at the expense of another. Rust v. Kelly (Mont. 1987), 741 P.2d 786, 787, 44 St.Rep. 1471, 1473; Meagher, 78 Mont at 469-70, 254 P. at 435-36. As provided by statute:

> One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he has some other or better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it.

Section 72-20-111, MCA.

Before a court may impose a constructive trust, it must determine whether the holder of the subject property has been unjustly enriched. Undoubtedly, in this case, Karen was enriched when the court awarded her the home built with funds furnished by Mother. But is Karen's enrichment unjust? We think not.

Injustice results from the performance of a wrongful act. Mother argues that the wrongful act in this case was Joe's breach of the trust she reposed in him. She contends that, by virtue of the fact that she was his mother, she stood in a confidential relationship with Joe, a relationship he violated when he failed to take steps to secure her interest in the property.

Even assuming that Mother is correct in asserting that she maintained a confidential relationship with Joe, this fact in and of itself will not give rise to a constructive trust. Equity will not impose a constructive trust for the violation of a confidential relationship unless the party seeking to impose the trust shows by clear and convincing evidence the exercise of fraud or undue influence. Mahaffey v. DeLeeuw (1975), 168 Mont. 274, 280, 542 P.2d 103, 107.

Here, Mother failed to introduce any evidence of fraud or undue influence. Quite the contrary, the record indicates that Mother entered into the series of money transfers with her eyes wide open. Joe represented only that he would repay the loans when he obtained steady employment. Although Mother knew his employment situation was shaky at best, she loaned him money. When he failed to honor her request to secure the loans, she continued to send him money.

A constructive trust arises in law to remedy a wrongful act. In this case, no wrongful act occurred.

We affirm the District Court.

_____
                                          Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices