FILED

March 8 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0747

DA 14-0747

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 61

PAMELA DEE VOLK, individually and in her
capacity as Conservator for RBV, a minor child,

       Plaintiff and Appellant,

v.

VALERIE GOESER; ROY DONALD VOLK, DIANE
NILSON VOLK and SARAYA ROBERSON, as
Co-Personal Representatives of the Estate of Roy
Craig Volk, and Does 1 through 10,

       Defendants and Appellees,

v.

SARAYA ROBERSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and For the County of Cascade, Cause No. DDV 13-340
                  Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant Pamela Dee Volk:

           Jason T. Holden, Dana A. Henkel, Faure Holden Attorneys at Law, P.C.,
           Great Falls, Montana

      For Appellee Valerie Goeser:

           Roberta Anner-Hughes, Anner-Hughes Law Firm; Billings, Montana

      For Appellee and Cross-Appellant Saraya Roberson:

           Gregory J. Hatley, James A. Donahue, Derek J. Oestreicher, Davis,
           Hatley, Haffeman & Tighe, P.C.; Great Falls, Montana

Submitted on Briefs: October 21, 2015

Decided: March 8, 2016

Filed:

_____
                        Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pamela Dee Volk appeals from the Summary Judgment Order of the Montana Eighth Judicial District Court granting summary judgment for Valerie Goeser. The District Court determined that a constructive trust should not be imposed on $2,306,103.13 of Roy Volk's life insurance proceeds for the benefit of his minor son, RBV, because Valerie Goeser was not unjustly enriched when she received Roy Volk's life insurance proceeds. We reverse the summary judgment and remand for further proceedings in accordance with this opinion.

## ISSUE

¶2     Appellant raises one issue on appeal, which we address as follows:

¶3     *Whether the District Court erred when it granted summary judgment to Valerie, and denied the imposition of a constructive trust on life insurance proceeds in favor of RBV, a minor child?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Roy Volk was married to Pamela Dee Volk in April 1996. The couple had a son, RBV, in the fall of 2000. On June 25, 2010, Roy filed a Petition for Dissolution of Marriage in the Montana Eighth Judicial District Court. On the same day, as part of the dissolution proceeding, the District Court issued the statutorily-mandated Summons and Temporary Restraining Order. The divorce proceedings lasted over a year and a half, ending with the court's hearing and dissolution of the marriage on December 21, 2011.

¶5     Roy and Pamela entered into a Marital Settlement Agreement ("MSA") on December 20, 2011. Several agreements were included as part of the MSA including a "Future Instruments" clause where Roy agreed "[h]usband shall execute a will naming

3

his son as beneficiary of his estate, giving all of his assets to his son." This clause included Roy's agreement to leave all of his assets to RBV through a will that would be executed as a "future document." Attached to the MSA as exhibit A, was a list of assets and liabilities for each party where Roy indicated that "[h]usband's New York Life insurance policy" (Policy 936) was an asset. The MSA further provided that if either husband or wife failed to disclose an asset, "that finding is presented to be grounds for the Court, without taking into account the equitable division of the marital estate, to award the undisclosed asset to the opposing party . . . ."

¶6 At the time of the divorce, Roy owned two term life insurance policies. The policies are New York Life Policy No. 46689799 ("Policy 799") with a benefit of $1,500,000; and New York Life Policy No. 76098936 ("Policy 936") with a benefit of $1,000,000. Policy 799 was not disclosed in the divorce; Pamela was the sole beneficiary, but she was not aware the policy existed. Roy disclosed Policy 936 in the divorce, and Pamela and Volk Sand and Gravel (Roy's business) were equal beneficiaries (50 percent to each) with a $200,000 collateral assignment to Stockman Bank. On July 15, 2010, while the restraining order was in effect, Roy changed the beneficiary designations on both policies and designated his sister, Valerie Goeser, as the new beneficiary.

¶7 Roy also had a daughter, Saraya Roberson. In June of 2005, Roy and Saraya's mother, Serena C. Roberson, entered into a Child Support Agreement pertaining to Saraya. That agreement contained a provision requiring Roy, within 30 days of the court's Order approving the agreement, to purchase a life insurance policy of $100,000

4

naming Saraya as the owner and sole beneficiary. The Child Support Agreement was approved and adopted by the Montana Eighth Judicial District Court on July 28, 2005. Roy never purchased the life insurance policy required by this Agreement, nor did Roy name Saraya as a beneficiary on any life insurance policy.

¶8 On April 30, 2012, just over four months after the divorce was final, Roy died unexpectedly at age 45. Roy did not have a will in place. Because Roy had changed his life insurance beneficiary designations in violation of the restraining order, Valerie received the life insurance proceeds from both policies in the total amount of $2,306,103.13. Valerie was shocked to learn upon Roy's death that she was the recipient of the two life insurance policies. Valerie invested the proceeds in a home and real property in Newport Beach, California.

¶9 After Roy's death, Pamela discovered that Valerie received the life insurance proceeds from Policy 936, due to Roy's change of beneficiary during the divorce. Pamela wrote Valerie to inquire about the policy and notify her of RBV's equitable claim. Valerie did not respond to the inquiry and Pamela subsequently sent a subpoena duces tecum to New York Life to determine how the policy benefit was dispersed. At that time she discovered the existence of the second life insurance policy, Policy 799, with the $1,500,000 benefit. Pamela also determined through discovery that she was the beneficiary on Policy 799 until Roy changed it to Valerie on July 15, 2010, while the restraining order was in effect. The New York Life records confirmed that both policies were paid to Valerie.

¶10 A probate was opened to settle Roy's estate. Pamela filed two creditor's claims in the probate on October 23, 2012. The first claim was on her behalf for payment Roy had agreed upon, and the second was on behalf of RBV for child support and health insurance costs totaling about $77,500. Roy's estate did not have sufficient funds to pay RBV's child support claim. On April 29, 2013, Pamela, on behalf of RBV, filed this action against Valerie and Roy Craig Volk's estate seeking a constructive trust over the insurance policy payouts for the benefit of RBV. The complaint named Saraya, as co-personal representative of Roy's estate, as a defendant. Pamela also filed two additional actions in April 2013 that are not part of this appeal: an action to reopen the dissolution for award of the policy proceeds due to violation of the restraining order, and another similar action to seek policy proceeds through the probate. While Valerie was notified of Pamela's equitable claim on RBV's behalf, she was not served in the dissolution or probate actions.

¶11 Judge Neill of the Montana Eighth Judicial District presided over all three of the actions tied to this case: Roy and Pamela's dissolution, the probate of Roy's estate, and here, Pamela's claims requesting a constructive trust for RBV. The three actions have significant overlap regarding parties, claims, and the equities of the case. This appeal arises out of the District Court's grant of summary judgment in Valerie's favor regarding Pamela's constructive trust claims for RBV.

¶12 Saraya filed a cross-appeal seeking imposition of a constructive trust for her benefit to fulfill the $100,000 liability. Subsequently, and by admission of both parties, Saraya and Pamela entered an agreement ("October Agreement") under which Pamela

6

would pay Saraya's claim from RBV's constructive trust if RBV prevails on his claims against Valerie.

## District Court Opinion

¶13 By May 2014, both parties moved for summary judgment. On May 16, 2014, Saraya sought leave from the District Court to file an Amended Answer and to assert cross-claims against Valerie. Several additional motions were made in the case, which were held in abeyance while the District Court considered the pending summary judgment motions. The District Court held hearings on both summary judgment motions. The court entered summary judgment in favor of Valerie on October 30, 2014. At that time the court also denied Saraya's motion for leave to amend. Pamela and RBV timely appealed on November 19, 2014. Saraya timely appealed on December 8, 2014.

¶14 The District Court granted summary judgment to Valerie on all claims. The court concluded that even though Roy had changed the beneficiary designation on both policies while the court's restraining order was still in effect, the case was different from this Court's decision in *Briese v. Mont. Pub. Employees Ret. Bd.*, 2012 MT 192, 366 Mont. 148, 285 P.3d 550, because Roy died after the divorce was final and the restraining order was lifted. The District Court reasoned the purpose of the restraining order is to maintain the status quo in regard to the parties' property so long as the dissolution action is pending—a purpose that terminates once the dissolution action is complete. The court further reasoned that once the restraining order was lifted, Roy would have been free to change the beneficiary at any time. The court found had he not changed the beneficiaries, Pamela still would have been removed as a beneficiary by

operation of law under § 72-2-814, MCA. Under this analysis, the court concluded that equity did not require voiding Roy's changes to the beneficiaries because Roy made no further changes after the dissolution.

¶15 The court rejected Pamela's argument that because Roy disclosed Policy 936 as an asset in the MSA he considered his insurance policies to be assets and therefore intended RBV to be the beneficiary. The court found, however, that neither the MSA nor the stipulated final parenting plan made any mention of life insurance policies and the MSA only required that Roy create a will and name RBV as the beneficiary of his estate (which Roy failed to do during the four months following the MSA). The court concluded that an insurance policy is a non-probate transfer and would pass outside of any will Roy had executed; thus, Roy's will would not have affected the insurance policies. Considering the intent of the parties and the language of the MSA, the court then concluded that the term "assets" clearly refers to Roy's testamentary estate, not specifically including the life insurance policies.

¶16 The District Court also rejected Pamela's argument that she should be awarded the proceeds of the second, undisclosed policy. The court agreed with Pamela that Roy should have disclosed the policy as an asset in the marital estate. Still, the court did not award the proceeds to Pamela on the basis that the term life policy does not receive any value until the holder's death. The court reasoned that marital property is valued at the time of the divorce proceedings, and thus the court could not take into account the policy's $1.5 million proceeds because they materialized only after Roy died, months after the divorce was finalized. Therefore, Roy's nondisclosure of the second policy,

8

even if a violation of the MSA, had no monetary effect on the value of the marital estate. The court concluded that the parties did not discuss insurance specifically in the MSA so it would be speculative for the court to say what effect the disclosure of the policy might have had on the parties' negotiations.

¶17    Finally, the District Court rejected Pamela's contention that Valerie had been unjustly enriched and that a constructive trust must be imposed. Accordingly, the District Court declined to award summary judgment and equitable relief to Pamela.

## STANDARD OF REVIEW

¶18    We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Albert*, ¶ 15. Once the moving party has met its burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Styren Farms, Inc. v. Roos*, 2011 MT 299, ¶ 10, 363 Mont. 41, 265 P.3d 1230. We further review a question of law to determine if the district court's legal conclusions are correct. *Palmer v. Bahm*, 2006 MT 29, ¶ 11, 331 Mont. 105, 128 P.3d 1031.

¶19    The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs the appellate court to review and determine questions of fact as well as questions of law. *Gitto v. Gitto*, 239 Mont. 47, 50, 778 P.2d 906, 908 (1989). We review a district court's findings of fact to ascertain whether they are clearly

9

erroneous. *Daines v. Knight*, 269 Mont. 320, 324, 888 P.2d 904, 906 (1995). A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Kovarik v. Kovarik*, 1998 MT 33, ¶ 20, 287 Mont. 350, 954 P.2d 1147.

## DISCUSSION

¶20  Section 40-4-101, MCA, provides that Montana's law concerning separation and dissolution of marriage:

> shall be liberally construed and applied to promote its underlying  purposes, which are to:
> (1) strengthen and preserve the integrity of marriage and safeguard family relationships;
> (2) *promote the amicable settlement of disputes* that have arisen between parties to a marriage;
> (3) *mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage*; and
> (4) *make reasonable provision for spouse and minor children during and after litigation* . . . .

Section 40-4-101, MCA (emphases added.)

¶21  In an effort to support these goals and promote a proper and amicable settlement, the District Court entered the statutorily-mandated restraining order in the dissolution proceeding, stating:

> Petitioner and Respondent are both hereby restrained as follows under the authority of § 40-4-121(3), MCA, 2009:
>
> 3. Petitioner and Respondent are hereby restrained from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability coverage held for the benefit of a party or a child of a party for whom support may be ordered.

¶22     This Court previously addressed the issue of changing beneficiaries under a restraining order in our decision in *Briese*. The dispute in *Briese* surrounded a retirement benefit beneficiary change made by a Yellowstone County deputy sheriff after a § 40-4-121(3), MCA, restraining order had been issued in conjunction with his petition for dissolution of marriage. While the marital dissolution proceedings were still pending with the restraining order in place, and without consent of his wife or the court, Briese changed his retirement beneficiary designation from his wife Erene, to his two minor children. The change of beneficiary was discovered after Briese died in the line of duty, while the dissolution proceedings were pending. We determined the change of beneficiary was invalid because it was made in violation of the statutorily-mandated restraining order.

¶23     We reasoned that "[t]he purpose of the law requiring a temporary restraining order is clearly to maintain the status quo with respect to all property of the parties." *Briese*, ¶ 25. We stated that this policy is in place to "[mitigate] the potential harm to spouses and children caused by the dissolution process itself and ensure that reasonable provision is made for the spouse and children during the litigation." *Briese*, ¶ 25. Further, we determined that "[t]he plain language of subsection (b) is quite broad, restraining both parties from unilaterally 'changing the beneficiaries of *any* . . . coverage . . . held for the benefit of a party.'" *Briese* ¶ 25 (quoting § 40-4-121(3)(b), MCA) (emphasis added). In plain terms, the restraining order serves as a protective umbrella over all marital assets while the parties negotiate an MSA or proceed with litigation. If agreement is reached on division of property, the parties' agreements are incorporated in

11

the MSA, the new contract between the parties. Then, with the MSA in place, the restraining order can be dissolved upon entry of the decree, and the MSA guides any further asset divisions and responsibilities of the parties.

¶24 As we determined in *Briese*, the remedy for restraining order violations in most cases is a "civil or criminal contempt action against the violator." *Briese*, ¶ 38. This remedy was not available in *Briese* because, similar to this case, the violator was deceased. In *Briese*, we reviewed the approaches used by other jurisdictions to solve this problem. Of note was our recognition of the Michigan Supreme Court position:

> It needs no citation that for violation of an injunction, a court, under its general powers, may order a return to the *status quo* . . . . Transfers of property in violation of an injunction are invalid and may be set aside . . . and subsequent death of the injunction violator does not prevent the court from exercising such power.

*Briese*, ¶ 39 (*citing Webb v. Webb*, 375 Mich. 624, 134 N.W.2d 673, 674-75 (Mich. 1965)).

¶25 In *Briese*, we determined that violation of a dissolution proceeding restraining order does not automatically void the beneficiary change. *Briese*, ¶ 40. Nonetheless, we found that the courts, at a minimum, possess "equitable power to order a return to the status quo when a party violating a temporary restraining order has died." *Briese*, ¶ 41. We look to our precedent in *Briese* and to the statutes as we turn to the facts in this case.

**Roy's Improper Change of Beneficiary on Policy 936**

¶26 On appeal, Pamela argues that the District Court erred in this case and abused its discretion when it determined that the violation of the restraining order had no actual effect on the beneficiary change and that the equities were not in favor of a constructive

12

trust for RBV. She further argues that equity requires the proceeds received by Valerie must be placed in a constructive trust for RBV. Pamela also asserts that Roy's June 25, 2010, violation of the restraining order cannot be excused by the District Court. She further contends that even though Roy changed the beneficiary designation to his sister Valerie, he did not intend his violation to control the ultimate disposition of his life insurance. Instead, she argues that the evidence demonstrates that Pamela and Roy always thought of Roy's life insurance as an asset and Roy intended to leave it, with all of his assets, to RBV. Pamela implies that Roy simply did not have his affairs in the order he would choose when he unexpectedly died and that if he had the opportunity, he would have set the affairs according to their MSA.

¶27 Valerie defends the District Court's equitable determination. She argues that because life insurance proceeds pass outside the testamentary estate, the life insurance contract was properly executed. She also contends that the MSA and Final Parenting Plan fail to mention any agreement or intention to name a particular beneficiary. She notes that Roy, during the four months before his death after the divorce, could have changed the beneficiary to any person of his choosing. Instead, he retained Valerie as the beneficiary on Policy 936, which should be considered his final intention.

¶28 Roy purchased Policy 936 on May 16, 2002, with a $665 down payment. The policy originally listed Volk Sand & Gravel as the beneficiary. On August 9, 2002, Roy changed the original beneficiary with fifty-percent to Pamela and with the other fifty-percent to Volk Sand & Gravel. Roy also included a "second beneficiary" of "Estate of Roy C. Volk." On August 22, 2002, Roy made a collateral assignment on the

13

policy with Stockman Bank, "up to $500,000" which apparently, based upon the record, was valued at approximately $200,000 at the time of his death. During the dissolution, with the statutorily-mandated restraining order in place, Roy changed the beneficiary on this policy to his sister Valerie, as sole beneficiary.

¶29 Roy's beneficiary change resulted, upon his death, in the payment of this life insurance policy, less the Stockman Bank assignment, to his sister Valerie. If Roy had not changed the policy, his wife Pamela would have remained on the policy throughout the pendency of the divorce. As the District Court pointed out, upon finalizing the dissolution, Pamela would have been removed from the policy by operation of law pursuant to Montana's Uniform Probate Code, § 72-2-814(2)(a)(i), MCA, which states:

> (2) Except as to a retirement system established in Title 19 or as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
> (a) revokes any revocable:
> (i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse;

Under the statute "revocable" is defined as:

> "Revocable," with respect to a disposition, appointment, provision, or nomination, means one under which the divorced individual, at the time of the divorce or annulment, was alone empowered, by law or under the governing instrument, to cancel the designation in favor of the individual's former spouse or former spouse's relative, whether or not the divorced individual was then empowered to designate the divorced individual in place of the individual's former spouse or in place of the former spouse's relative and whether or not the divorced individual then had the capacity to exercise the power.

14

Section 72-2-814(1)(f), MCA.

The Official Comments to the statute provide further specificity regarding the types of revocable instruments:

> The revisions expand the section to cover "will substitutes" such as revocable inter-vivos trusts, life-insurance, and retirement-plan beneficiary designations, transfer-on-death accounts, and other revocable dispositions to the former spouse that the divorced individual established before the divorce (or annulment).

Tit. 72, Ch. 2, Mont. Code Ann., Annotations, Official Comments at 635 (2012) (*see* also *Thrivent Fin. v. Andronescu*, 2013 MT 13, 368 Mont. 256, 300 P.3d 117).

¶30 We determined in *Thrivent* that this revocation-upon-divorce statute operates at the time the "governing instrument is given effect" and the provision is to be treated as if the "divorced individual's former spouse (and relatives of the former spouse) disclaimed the revoked provisions[.]" *Thrivent*, ¶ 8. Or, more simply, when the divorce is final between the parties, any designation (such as a life insurance beneficiary) by the divorced individuals of their former spouse is automatically revoked upon divorce.

¶31 Turning to Roy's Policy 936, the effect of not removing Pamela as the beneficiary, or retaining the status quo, would have caused her share of the policy proceeds to pass to Roy's estate under § 72-2-814, MCA. Because Roy had no will, after the proceeds passed to the estate they subsequently would have passed to Roy's children in the probate by way of the intestacy statutes. Section 72-2-113, MCA. We note that in the MSA, the parties list Policy 936 as an asset. The MSA also indicates Roy's intent to name RBV as the beneficiary of his estate specifically indicating Roy will leave RBV all of his assets.

15

The status quo prior to Roy's improper change—had the restraining order not been violated—would have accomplished that end.

¶32  Here, Valerie argues the status quo was unaffected because the restraining order had already been lifted by the time Roy died, so there is no harm. The argument however, overlooks the statute's purpose to protect the status quo at the time the statutorily-mandated restraining order is entered. It is misdirected, in addition to being speculative, to say that Roy could or would have changed the beneficiary after the dissolution anyway, because the policy of the law is to preserve the status quo, protect the spouse and the children, and to promote an amicable settlement. In addition, the evidence indicated that Roy—not anticipating that he would die within months—did not have his affairs in order. Roy's disheveled affairs include failures to execute documents required in his parenting actions with both Pamela and his former partner, Serena. Ultimately, it is speculative of Valerie to argue that Roy would have changed the beneficiary to Valerie after the divorce—when it would have been legal to do so—particularly where both of his parenting agreements required him to ensure support for his children and he failed to do so.

**Roy's Failure to Disclose Policy 799 and Improper Change of Beneficiary**

¶33  Roy purchased Policy 799 on February 14, 2000, with a $924 down payment. Pamela Volk was the sole beneficiary from the inception of this policy until the couple's dissolution proceeding. During the dissolution, with the statutorily-mandated restraining order in place, Roy changed the beneficiary on this policy to his sister Valerie, as sole

16

beneficiary. Pamela was never aware of the policy and he did not disclose the policy during the dissolution proceeding.

¶34 In its determination regarding Policy 799, the District Court found that Roy failed to disclose the existence of the policy in the MSA, but determined this failure had no effect on the value of the marital estate because, as a term policy, it had no value until Roy died. The parties make numerous arguments regarding Roy's failure to disclose the policy. Pamela argues the District Court improperly relied on "value" in its equitable determination because she and Roy considered Roy's life insurance an asset. She argues that Roy violated Paragraph 20 of their MSA by not disclosing the policy, which is grounds for the court to award it to her, and that it should be placed in trust for RBV. Pamela claims that the failure to disclose the policy unfairly affected negotiations in the dissolution. Valerie argues that any failure to disclose property under § 40-4-253, MCA, provides only a presumption that the property can be awarded to the other party. She contends that the District Court properly exercised discretion in declining to re-open and change the settlement. Valerie also argues that the policy was never part of the estate, because the insurance passes outside the estate, and that resolution of the policy is solely a contract issue.

¶35 The District Court concluded that Roy "likely should have disclosed Policy 799 as an asset in the marital estate." The court noted that the restraining order statute, § 40-4-121, MCA, prohibiting beneficiary changes, bolsters this argument. The District Court found that the failure to disclose analysis is properly raised in a dissolution proceeding; nonetheless, the District Court possesses further authority under the

17

contractual terms of the MSA to determine whether failure to disclose is grounds for award of the property or benefit to the other party. In the Order, the District Court determined that the policy had zero value at the time of the dissolution and, because there was no value in the policy, the court could not determine what impact disclosure might have had on the MSA. The court concluded, under this analysis, that any remedy would only be based on speculation of how proper disclosure may have changed the MSA.

¶36 However, we determine that whether the failure to disclose the policy is material to the settlement agreement is not the dispositive issue regarding Policy 799. The dispositive issue on Policy 799 is the improper change of beneficiary while the § 40-4-121(3), MCA, dissolution restraining order was in place. The point is not whether disclosure of the policy would have affected the parties' negotiations in the MSA; rather, the point is that had Roy not changed the beneficiary in violation of the restraining order, the status quo on the policy would have allowed the benefit to be passed to the existing beneficiary, Pamela, or—by operation of law—into Roy's estate under the same analysis as we have made in Policy 936.

¶37 When Roy purchased these policies, and any time thereafter until he filed the dissolution, he was free to designate the beneficiary as he chose. When Roy filed the dissolution and the statutorily-mandated restraining order applied, Roy was no longer free to make those changes without the consent of the court and Pamela. Under § 40-4-121(3)(b), MCA, Roy was prohibited from changing his life insurance beneficiary during the marriage dissolution proceedings. When we made similar findings in *Briese*, we invalidated Briese's change of designation from his wife to his children, even though

18

it did not affect the value or how the benefits were distributed, because § 40-4-121(3)(b), MCA, "does not include any exceptions for changes to beneficiaries from spouse to protected child or vice versa." *Briese*, ¶ 31. The statute operates the same in this case and there are clearly no exceptions in the statute allowing for a change of beneficiary from wife to sister or vice versa, or otherwise.

¶38 In *Briese*, we determined that the courts possess "equitable power to order a return to the status quo when a party violating a temporary restraining order has died." *Briese*, ¶ 41. There is no dispute that Roy's changes of beneficiary were made while the statutorily-mandated restraining order was in place. Because Roy made improper changes to Policy 936 and Policy 799, those changes, in violation of the statute, are invalid and must be set aside. We conclude, as we did in *Briese*, that the District Court improperly interpreted the law regarding Roy's improper change of beneficiary. The statute supports a conclusion that transfers of property in violation of an injunction, like that in *Briese* and in this case, are invalid and should be set aside. Death of the restraining order violator does not prevent this Court from exercising that power. Accordingly, we conclude that Roy's improper changes to his beneficiary designations must be set aside and the designations returned to the status quo, as they were prior to the dissolution, in order to promote both the fairness and equity the statute is intended to provide and the agreements that Roy made to support his children.

**Unjust Enrichment and Constructive Trust**

¶39 Returning the parties to the status quo in this case would require return of the life insurance proceeds to the estate, a task that is complicated because the funds have been

19

dispersed and invested in real property. Because Valerie received the proceeds under the express terms of the policies, the question arises whether she was unjustly enriched. If so, fashioning a remedy or return to the status quo by setting the judgment aside requires further action by the District Court.

¶40 Pamela brings her claim in this case, on behalf of RBV, under the theory of an alleged constructive trust. She argues that Valerie was unjustly enriched when she received the benefit of Roy's insurance policies, a result of the improper beneficiary changes. Pamela argues that the District Court erred in this case and abused its discretion when it determined that the restraining order violation had no actual effect on the beneficiary change and that the equities were not in favor of a constructive trust for RBV. Pamela argues that Roy's June 25, 2010 violation of the restraining order cannot be affirmed and excused by the District Court.

¶41 Valerie argues that the elements of unjust enrichment were not met and a constructive trust is improper in this case. Valerie contends that the violation of the restraining order is not relevant because after the dissolution, Roy could have changed the beneficiary to any person of his choice. Valerie also argues that the written agreements in the underlying divorce action, and life insurance contracts, control all of the issues in this case and that therefore, there is no equitable remedy because the issues are settled by contracts, where equity cannot apply.

¶42 In its Order, the District Court analyzed the three elements of unjust enrichment and sought to balance the equities. The District Court correctly concluded that the first two elements of unjust enrichment are met according to the facts of the case. First, a

20

benefit was conferred on Valerie by her brother Roy when she received the life insurance proceeds as a result of the improper designation. Second, the facts demonstrate that Valerie, as the conferee, appreciated and possessed knowledge of the conferred benefit as she acknowledged receipt of both policies, and she acknowledged she used the money from her brother to set up a trust, TVG trust, to hold the funds and invest in real estate, specifically, the house where she resides. The central dispute in this case surrounds the third element, where the district court was required to weigh the facts and evidence to determine whether the retention of the benefit Valerie incurred created an inequitable and unjust result.

¶43    In addressing this third element, the District Court weighed three separate arguments, and concluded: 1) Equity does not require voiding the beneficiary changes made by Roy in violation of the restraining order; 2) Roy's failure to execute a will and properly execute his part of the MSA does not support a finding that Valerie was unjustly enriched; and 3) the "October Agreement" between Pamela and Saraya had no bearing on Valerie's receipt of the insurance proceeds and does not bind Valerie to an unjust enrichment finding nor a constructive trust. After weighing the equities of these issues, the District Court refused to impose a constructive trust on the insurance proceeds.

¶44    This Court previously considered the law of unjust enrichment in the context of a constructive trust in *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, 368 Mont. 330, 296 P.3d 450. There, we concluded a constructive trust, "serves as a possible remedy to rectify the unjust enrichment of a party." *N. Cheyenne Tribe*, ¶ 39.

21

¶45    A constructive trust serves as a proper remedy to unjust enrichment.    "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it."    Section 72-38-123, MCA; (*see also N. Cheyenne Tribe*, ¶ 30, (*citing In re Estate of McDermott*, 2002 MT 164, ¶ 25, 310 Mont. 435, 51 P.3d 486)) (*see generally* 1 Dan B. Dobbs, *Dobbs Law of Remedies: Damages-Equity-Restitution* § 4.3(1), 587, § 4.3(2) (Pract. Treatise Series, 2d ed., West 1993)) [hereinafter *Law of Remedies*].  This Court has broad discretion afforded by the principles of equity to impose a constructive trust despite lack of any wrongdoing by the person holding the property.  *N. Cheyenne Tribe*, ¶ 29, (*citing McDermott*, ¶¶ 25-26). The Court may simply declare a constructive trust to exist, "[n]othing else is required." *N. Cheyenne Tribe*, ¶ 32 (*citing Eckart v. Hubbard*, 184 Mont. 320, 325, 602 P.2d 988, 991 (1979)).   A claim for unjust enrichment, in the context of a constructive trust, requires proof of three elements:

> (1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value.

*N. Cheyenne Tribe*, ¶ 39.

**Unjust Enrichment**

¶46    Here, Roy's actions set in motion the series of events changing the status quo in regard to his life insurance and the ultimate receipt of the benefit by his sister Valerie. Because this benefit went to Valerie, we apply the unjust enrichment factors to determine

22

whether she was unjustly enriched. It is clear from the facts of the case that the first two elements of the test have been met: 1) a benefit has clearly been conferred upon Valerie through Roy's improper insurance beneficiary change; and 2) Valerie has knowledge of the benefit, acknowledging receipt of the funds and investing them in a home and real property.

¶47 The third element of unjust enrichment and the circumstances created by Roy's actions during and after the dissolution proceeding require further analysis. Thus, we consider whether Valerie's acceptance and retention of the benefit from Roy, under these circumstances, makes it inequitable for Valerie to retain the benefit without payment of its value. The "circumstances" in this case are a result of Roy's improper change of the beneficiary while the statutorily-mandated restraining order was in place. The final result of the circumstances is that Roy's estate is unable to pay claims to his children or provide for their future as was intended and promised under the MSA and the parenting agreement providing for Saraya. If Roy had not made this improper change, the circumstances would be much different. Pamela would have been removed as the beneficiary upon the dissolution of their marriage, and the life insurance proceeds, under § 72-2-814, MCA, would have diverted into the estate upon Roy's death, where it would have been distributed to Roy's children under the intestacy statutes.

¶48 While we did not consider unjust enrichment in the *Briese* case, we did conclude that the remedy for the improper beneficiary designation was to set aside the change. In *Briese*, even when the effect of changing the benefit did not alter the final beneficiary upon whom the benefit was bestowed, we set the change aside because violation of the

23

statute invalidated Briese's change. Here, similarly, the violation requires the Court to set aside the improper change and restore the status quo. Because the improper change must be set aside, we view the subsequent circumstances created by the change—Valerie's receipt of the insurance proceeds—to be similarly improper because the benefits went to Valerie as a result of Roy's mistakes. Accordingly, we conclude that the third element of unjust enrichment has been met because Valerie is holding the life insurance proceeds, which she received as a result of Roy's improper change, "under such circumstances that in equity and good conscience [s]he ought not to retain it." *N. Cheyenne Tribe*, ¶ 33.

**Constructive Trust**

¶49 Because we conclude that Pamela, on RBV's behalf, has established a claim showing that Valerie was unjustly enriched, we now consider the ramifications of the imposition of a constructive trust as a remedy for the unjust enrichment. "A party's proof of unjust enrichment entitles it to restitution from the other party—regardless of any wrongdoing on the part of the unjustly enriched party." *N. Cheyenne Tribe*, ¶ 37 (*citing Lawrence v. Clepper*, 263 Mont. 45, 53, 865 P.2d 1150, 1156 (1993)). As we stated in *N. Cheyenne Tribe*, "[u]njust enrichment serves as a unifying principle for a wide variety of equitable claims and . . . a court may order restitution to vindicate these types of equitable claims." *N. Cheyenne Tribe*, ¶ 38, (*citing* Dobbs, *Law of Remedies* § 4.1(3), 564). The Court measures restitution for unjust enrichment "by the defendant's gain." *N. Cheyenne Tribe*, ¶ 38, (*citing* Dobbs, *Law of Remedies* § 4.1(1), 555). In the context of a constructive trust the plaintiff does not need to show deprivation of something to

recover, "it is sufficient that the defendant gained something that it should not be allowed to retain." *N. Cheyenne Tribe*, ¶ 38 (*citing McDermott*, ¶¶ 25-26).

¶50    "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." *N. Cheyenne Tribe*, ¶ 30 (*citing McDermott*, ¶ 25 (*quoting* § 72-33-219, MCA)).  In this instance, the elements of unjust enrichment have been met and we conclude that Valerie has been unjustly enriched.  In turn, in order to work an equitable result, we find that though Valerie has done nothing wrong, she is holding title to property and subject to an equitable duty to convey it, or a portion thereof, to another on the ground that she would be unjustly enriched if she were permitted to retain it.  *N. Cheyenne Tribe*, ¶ 30.  Accordingly, we determine that imposing a constructive trust on the proceeds of Roy's two life insurance policies, Policy 799 and Policy 936, in favor of RBV is the proper remedy in this case.

¶51    As we noted, a significant issue emerges from this determination because Valerie has accepted the life insurance proceeds and spent or invested them on real property. This is not a case where the asset or money is being held in trust while a determination is made.  We recently reviewed a similar circumstance in *LeMond v. Yellowstone Dev., LLC*, 2014 MT 181A, 375 Mont. 402, 336 P.3d 345, a case in which we imposed a constructive trust in LeMond's favor because he lost title to lands promised to him in business dealings with Yellowstone Development.

¶52    In *LeMond*, LeMond entered an agreement to trade his work promoting sales for Yellowstone Development for a particular land parcel owned by Yellowstone

25

Development. Prior to completing the agreement, Yellowstone Development traded the promised parcel to a third party and it was unavailable to LeMond when he completed his part of the contract. LeMond asked for the traded parcels to replace the conveyed parcels as part of a constructive trust, and the District Court agreed. We concluded that, because the traded parcels had more acreage and likely a higher value, the District Court had to determine the extent of the remedy. LeMond was granted a constructive trust under an implied contract legal theory, unlike the unjust enrichment theory in this case. Nonetheless, the resulting constructive trusts are similar because LeMond, like RBV, did not have direct access to the property subject to the constructive trust; in other words, the property was not set aside awaiting the Court's determination. In *LeMond*, we remanded to the District Court for a determination of value regarding other lands owned by Yellowstone Development to replace the lost parcels. There, as here, the District Court needed to determine the proper amount of the constructive trust to make a determination "if, in equity and conscience, it belongs to [the plaintiff]." *LeMond*, ¶ 51 (citation omitted). We explained that the "equity of the transaction must shape the measure of relief." *LeMond*, ¶ 52 (citation omitted).

¶53   A court sitting in equity is empowered to determine all questions involved in the case, and to fashion an equitable result that will accomplish complete justice. *Blaine Bank of Montana v. Haugen*, 260 Mont. 29, 35, 858 P.2d 14, 18 (1993); *Kauffman-Harmon v. Kauffman,* 2001 MT 238, ¶ 11, 307 Mont. 45, 36 P.3d 408. As in *LeMond,* the measure of relief must be shaped by the circumstances of the affected parties and the equity of the transaction. We conclude it is necessary to remand this

26

matter to the District Court so that, acting in equity, it may fashion a result that will accomplish justice in light of the present circumstances of all affected parties. Among other matters, because we are directing that Roy's changes of beneficiary designations be set aside and the designations returned to the previous status quo, the court must take account of any claim that may be asserted by Volk Sand & Gravel as co-beneficiary under Policy 936. The court may in addition consider any other factors it deems pertinent to its obligation to work an equitable result, and will be free to direct the nature and course of further proceedings on remand.

**Saraya Roberson and the "October Agreement"**

¶54 Because we have determined that a constructive trust must be imposed on Roy's insurance proceeds we conclude that we do not need to reach the arguments made on cross-appeal by Saraya Roberson. Pamela agreed on RBV's behalf in her Amended Complaint of June 11, 2013, to pay Saraya's creditor's claim against Roy's estate if a constructive trust was created in favor of RBV. Thus, we determine that this issue is moot as it is properly resolved under the parties' agreement.

## CONCLUSION

¶55 We conclude that Valerie Goeser has been unjustly enriched because she has received a benefit that rightfully belongs to another. We make this determination in equity and conclude that Roy Volk's errors in changing the beneficiary of his life insurance under the statutorily-mandated restraining order invalidates his designations on Policy 799 and Policy 936. We hold that a constructive trust was created on RBV's behalf as a result of these errors, and that Valerie Goeser must return the insurance

proceeds or that portion of the proceeds by which she "would be unjustly enriched if [she] were permitted to retain [them]."  Section 72-38-123, MCA.

¶56    Reversed and remanded for further proceedings consistent with this Opinion.


/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER


Justice Jim Rice, concurring.

¶57    I concur with the Court's decision to reverse and remand for further proceedings. I would add the observation that the Court has not ordered that all of the contested life insurance proceeds must necessarily be placed in trust for RBV.  Rather, on remand, the District Court will need to design equitable relief based upon all of the circumstances of the affected parties.  These factors could include the funds currently held for RBV's benefit; the reasonable future needs of RBV; the fact that, by agreement, Saraya's creditor's claim would be paid from the proceeds of the constructive trust; Valerie's financial situation, including any indebtedness she incurred or other disadvantage she assumed by virtue of receiving the insurance proceeds, and the costs of the disgorgement process; any claim asserted by Volk Sand & Gravel as co-beneficiary under Policy 936 as a result of our decision setting aside Roy's final changes of beneficiary designations; and

28

any other factor that the District Court would deem appropriate to consider in working an equitable result in this matter.

/S/ JIM RICE

Justice Beth Baker joins in the concurring Opinion of Justice Rice.

/S/ BETH BAKER

Justice James Jeremiah Shea, concurring.

¶58    I concur with the Court's analysis in this case and its ultimate conclusion that Valerie was unjustly enriched and a constructive trust should be imposed. I submit, however, that although the District Court should properly be afforded the discretion to fashion an equitable resolution of this issue on remand, we can provide more precise guidance as to what the equitable objective should be.

¶59    There is no dispute that Roy violated the District Court's restraining order when he changed the beneficiary of both life insurance policies to name Valerie as the sole beneficiary. There is likewise no dispute that Valerie was not otherwise entitled to any of the life insurance proceeds and, but for Roy's violation of the restraining order, she would not have received any of the proceeds. We also know the precise amount, down to the penny, of the money that Valerie received and to which she was not entitled: $2,306,103.13. So when we conclude "that Valerie Goeser must return the insurance proceeds or that portion of the proceeds by which she 'would be unjustly enriched if she

29

were permitted to retain [them],'" Opinion, ¶ 55, I have to ask: What do we mean by "portion"?

¶60 Having determined that Valerie was not entitled to the life insurance proceeds, I would conclude that the portion of the proceeds by which Valerie would be unjustly enriched if she were entitled to retain it is anything above $0. That being noted, I recognize the Court's concern that there is a significant issue in the imposition of the constructive trust because Valerie has spent or invested the life insurance proceeds on real property in California. Opinion, ¶ 51. It seems to me, however, that the primary significance of this issue is that it will likely require Valerie to sell the property if she is otherwise unable to pay the $2,306,103.13 that should have gone to Roy's estate. While requiring Valerie to sell her home is indeed significant, it is certainly no more significant of an issue than ensuring that Roy's estate is able to pay claims to Roy's children and provide for their future as was intended and promised under the MSA and the parenting agreement providing for Saraya.

¶61 I agree that achieving an equitable result in this case will require the resolution of certain issues that are best left to the District Court on remand. For example, fluctuating real estate market values may affect Valerie's ability to recoup and disgorge the full amount of the proceeds. A court sitting in equity is empowered to determine all questions involved in the case, and to fashion an equitable result that will accomplish complete justice. *Kauffman-Harmon*, ¶ 11. While the nuances of fashioning that equitable result are properly within the purview of the District Court on remand, I believe the facts of this case enable us to hold on appeal that the objective should be the

recoupment, to the fullest extent possible, of the entire life insurance proceeds.  I would so instruct the District Court.

/S/ JAMES JEREMIAH SHEA

Chief Justice Mike McGrath joins the concurrence.

/S/ MIKE McGRATH

Justice Laurie McKinnon, dissenting.

¶62  I disagree with the Court's decision on multiple grounds.

¶63  Preliminarily, the Court has not accorded proper deference to a trial court's decision in matters of equity where there is no dispute of fact and the trial court has correctly applied the law.  Although the District Court's decision was rendered pursuant to summary judgment in a case of equity, *see* § 3-2-204, MCA, the decision of whether a constructive trust should be created; what, if anything, should be done for violation of an economic restraining order in a dissolution proceeding; and the remedy for failing to disclose a marital asset are all firmly committed to the discretion of the trial court for which an abuse of discretion must be found.  Here, there were no disputed facts and the law—specifically § 40-4-252(4), MCA, and *Briese*, ¶ 39—allowed the trial court discretion in fashioning an appropriate remedy.  In *Briese*, we specifically rejected a per se rule that automatically voids changes made in violation of an economic restraining order, holding that equitable principles should govern rather than a bright-line rule that beneficiary changes, as a matter of law, are void.  *Briese*, ¶ 40 ("Other courts, while

31

holding that the violation does not serve to *automatically* void the beneficiary change, generally have found that courts have the authority to grant some form of relief through use of their powers of equity."). Pursuant to § 40-4-202, MCA, a district court has broad discretion to distribute a marital estate equitably according to the circumstances of the case and, absent clearly erroneous findings, "we will affirm a trial court's property distribution unless the court abused its discretion." *Marriage of Gebhart*, 2003 MT 292, ¶ 16, 318 Mont. 94, 78 P.3d 1219. In my view, we have failed to account for the discretion of the trial court in our standard of review. The District Court presided over the dissolution, the probate, and claims of unjust enrichment and creation of a constructive trust. I would accord the trial court considerable latitude and discretion in applying and formulating an equitable remedy, and the trial court's decision should not be overturned in the absence of an abuse of discretion. *See Rawlings v. Rawlings*, 2010 UT 52, ¶ 21, 240 P.3d 754 (2010).

¶64 The decision reached by the Court reforms the Marital Settlement Agreement, ignores the Final Parenting Plan, and invalidates life insurance contracts. The principal issue before the Court is whether a constructive trust should be imposed on $2,306,103.13 for the benefit of RBV, because Valerie was unjustly enriched when she received Roy's life insurance proceeds due to the fact that: (1) Roy violated the TRO by changing beneficiaries of two life insurance policies; (2) Roy failed to execute a will giving all of his assets to RBV; and, alternatively, (3) Roy failed to disclose Policy 799 as an asset during their divorce.

¶65 It is undisputed that Roy violated the economic TRO by changing his beneficiary designations in two term life insurance policies during the pendency of his dissolution proceeding and while the economic TRO was in effect. The issue, however, is whether Valerie—who was not a party to the dissolution proceeding—has been unjustly enriched. It is the third element of the test for unjust enrichment set forth in *N. Cheyenne Tribe* which is at issue in these proceedings: whether "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *N. Cheyenne Tribe*, ¶ 36. The imposition of a constructive trust serves as a possible remedy to rectify the unjust enrichment of a party. Accordingly, it must be *inequitable* for Valerie to retain the benefit of Roy's life insurance proceeds.

¶66 In *Briese*, the husband died while the divorce was pending and the economic TRO was in effect. We stated in *Briese* that the purpose of an economic restraining order in a dissolution proceeding is to "maintain the status quo" of the parties "so long as a dissolution action is pending." *Briese*, ¶ 25. An economic restraining order "mitigates the potential harm to spouses and children caused by the dissolution process itself and ensures that reasonable provision is made for the spouse and children during the litigation." *Briese*, ¶ 25. In fashioning an appropriate equitable remedy for a violation, a trial court must be cognizant of these principles and considerations.

¶67 We revisited the issue in *In re Estate of Corrigan*, 2014 MT 337, 337 Mont. 364, 341 P.3d 623, when the husband died prior to the dismissal of the dissolution proceeding. We held that the husband's failure to serve his wife with the dissolution petition and

33

accompanying economic TRO within the three-year deadline for service of pleadings set forth in M. R. Civ. P. 4(t)(1) rendered the economic TRO ineffective after the three-year deadline lapsed. *In re Estate of Corrigan*, ¶ 21. Because the TRO was no longer effective, we refused to void the husband's change in beneficiary designation to his adult children from his wife, finding *Briese* distinguishable because it involved "an active and ongoing divorce proceeding." *In re Estate of Corrigan*, ¶ 21. We explained that "in *Briese* we declined to adopt a rule that would automatically void any change of beneficiary made by a decedent in violation of a divorce TRO. Rather, we gave the district court the discretionary authority to void such a change if equitable principles demanded it." *In re Estate of Corrigan*, ¶ 20 (internal citation omitted).

¶68 Here, Roy's death occurred after the divorce was finalized and the economic TRO had been dissolved. Once the TRO was dissolved, the District Court recognized that Roy would have been free to change his beneficiaries at any time. Pursuant to § 72-2-814 (2)(a)(i), MCA, Pamela, as an ex-spouse, would have been removed as a beneficiary of any of Roy's life insurance policies as a matter of law. Therefore, while a change of beneficiary may have been voidable up until the dissolution was final, upon the economic TRO being dissolved there were no restraints on Roy's ability to change the beneficiary. The District Court properly factored these considerations into its decision to deny Pamela equitable relief, finding that Roy's change of beneficiary was evidence of his intent to make Valerie the beneficiary of his life insurance. Contrary to the Court's conclusion, the fact that Roy actually did change his beneficiary requires no speculation about Roy's intent and that he would have effectuated that intent subsequently through

34

executing a valid change of beneficiary. The District Court, unlike this Court, refused to speculate that Roy would not have followed through with a change when it concluded that Roy obviously intended Valerie to be the beneficiary having made no further changes after dissolution or the lifting of the economic TRO. The District Court observed that Valerie was not a party to the dissolution proceeding and, therefore, it was not "inequitable" for her to receive the proceeds which Roy obviously intended her to have and which had been memorialized in an insurance contract. This Court has not found the District Court's refusal to speculate or its findings regarding Roy's actions clearly erroneous.

¶69 Unjust enrichment is "the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a (2011); *see also* § 72-38-123, MCA. We relied upon 66 American Jurisprudence 2d *Restitution and Implied Contracts* § 11 (1973) in *N. Cheyenne Tribe* to establish the elements of unjust enrichment. *N. Cheyenne Tribe,* ¶ 39. "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where *there is no legal contract* but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." 66 Am. Jur. 2d *Restitution and Implied Contracts* § 11 (emphasis added). Thus, to permit recovery on a theory of quasi contract where a written agreement *exists* would constitute a reformation of the contract and subversion of principles of law relating to contracts. A life insurance policy is issued pursuant to a contract. Moreover, "[a] life insurance policy owner, like a

testator, may alter or revoke designations at any time until death; thus, either instrument—whether will or insurance policy—must be interpreted and applied at death in order to effectuate the transferor's final intent." *Thrivent Fin. For Lutherans v. Andronescu*, 2013 MT 13, ¶ 7, 368 Mont. 256, 300 P.3d 117. The District Court determined that Valerie had not been unjustly enriched when she received proceeds pursuant to a valid insurance contract. The District Court did not make an incorrect conclusion of law or clearly erroneous factual finding in doing so.

¶70 The MSA, by its plain terms, provides that Roy was to execute a will making his son the beneficiary of his estate, not his life insurance. Life insurance proceeds are non-testamentary in nature and pass outside of the estate in accordance with the wishes of the insured. Section 72-6-111, MCA. Neither the MSA nor the Parenting Plan include any provision that states either party agreed to procure or maintain a life insurance policy for the benefit of anyone. Although it is common for marital settlement agreements or parenting plans to contain agreements requiring the procurement and maintenance of a life insurance policy with minor children, as an aspect of child support, designated as beneficiaries, neither the MSA nor Parenting Plan here mention anything about life insurance. In fact, although Pamela was aware of at least one of Roy's life insurance policies she chose not to pursue Roy's life insurance in the MSA. The District Court recognized that although Roy was required to make a will naming RBV as the beneficiary of his estate, Roy failed to do so prior to his untimely death. The District Court attempted to ascertain the intent of the parties when entering into the MSA and determined that it was not the parties' intention to include Roy's insurance policies in the

36

MSA or the Parenting Plan. Given the provisions of § 72-6-111, MCA, and that the policy that was disclosed was given to Roy in the MSA, I agree with the District Court that Roy's failure to make a will does not support a finding that Valerie has been unjustly enriched. The Court thus incorrectly concludes that Valerie was unjustly enriched because "Roy's estate is unable to pay claims to his children or provide for their future as was intended and promised under the MSA and the parenting agreement providing for Saraya." Opinion, ¶ 47. Such a conclusion confuses principles of contract, the District Court's findings of fact, and relevant statutory provisions.

¶71    As the Court appears to restrict its analysis only to Roy's violation of the economic TRO, I will not address whether a term life insurance policy is an "asset" with a cash value and whether it was required to be disclosed or whether it would have been significant to the parties in negotiating their marital property settlement. I would affirm the District Court's decision by applying a correct standard of review and the principle that the District Court be afforded latitude in fashioning an appropriate equitable remedy for violation of one of its orders.

¶72    I dissent.

/S/ LAURIE McKINNON

37