FILED

09/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0084

DA 24-0084

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 203N

FAYE JACKSON, as Personal Representative
of the Estate of Edna Balkoski,

      Plaintiff and Appellant,

  v.

STEVEN J. BALKOSKI, an individual,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-2019-726C,
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Michael L. Rabb, Jeffrey Driggers, The Rabb Law Firm, PLLC, Bozeman,
Montana

      For Appellee:

            Barbara C. Harris, Montana Legal Services Association, Helena, Montana

                Submitted on Briefs: August 14, 2024

                      Decided: September 10, 2024

Filed:

_____
                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Faye Jackson, as Personal Representative of the Estate of Edna Balkoski (Estate), appeals from the January 9, 2024 Amended Findings of Fact, Conclusions of Law, and Order (Amended Order), issued by the Eighteenth Judicial District Court, Gallatin County. We affirm.

¶3 This case arises from a dispute between the decedent Edna M. Balkoski (Edna) and her son, Appellee Steven J. Balkoski (Steven) over the status of the deed to the home in which Edna resided in Bozeman, which the parties called the "Milkhouse property."

¶4 In 2013, Edna decided to purchase a home in Bozeman. Her daughter Faye Jackson (Faye) located properties for sale for Edna to consider and Steven drove Edna to look at those properties. Edna chose the Milkhouse property and purchased it. A Warranty Deed, granting her ownership of the Milkhouse property, was filed with the Gallatin County Clerk and Recorder on December 27, 2013.

¶5 Edna resided at the Milkhouse property. Faye lived with Edna for a time and then relocated to Billings. After Faye moved to Billings, Steven's daughter Adria Balkoski (Adria) moved in with Edna. Edna, who was 90 or 91 years old when Adria moved in, was able to care for herself, meeting her daily needs, driving herself to and from religious

2

services, and managing her own finances, including paying her own bills and filling out her tax returns.

¶6 In January 2016, Steven, who resided in the state of Washington, visited Edna in Bozeman. During his visit, he and Edna talked about her assets. Steven and Faye's father Stanley had died in 1995. Prior to Stanley's death, he and Edna had advised Steven and Faye that their estate would be split equally between the two of them. During his January 2016 conversation with Edna, Steven became upset about what he perceived as unequal treatment between himself and Faye, as Edna had either given or loaned Faye substantial amounts of money that Faye had not paid back.

¶7 On January 14, 2016, Edna signed a Quitclaim Deed at Security Title Company in Bozeman, with her signature notarized by a Security Title employee. This deed states that Edna transfers rights to the property to herself and Steven "as joint tenants with right of survivorship (not tenants in common), forever." At the time Edna signed the deed, she was 92 years old.

¶8 Steven did not draft the Quitclaim Deed or provide it to Edna, nor did he advise her as to the legal effect of the deed. Steven, who is over age 70, has suffered three significant head injuries during his lifetime, including at least one during childhood, and he has experienced lifelong difficulties with reading, writing, and recalling dates.

¶9 Steven understood Stanley and Edna had always intended to leave equal inheritances for his sister and him. However, he believed Edna had given Faye significantly more financial assistance than he had received and this deed was Edna's attempt to "balance the estate" between the siblings. The transfer was a gift and Edna

3

intended the transfer to avoid probate. Steven also testified that, both before and after the transfer, he performed construction and maintenance activities at the Milkhouse property at Edna's direction, including landscaping, painting, and sheetrock installation.

¶10 In 2019, Edna decided to sell the Milkhouse property and move to Billings. Faye testified that Edna had become dissatisfied with the medical care in Bozeman and she wished to live closer to Faye. However, when Edna tried to sell the property, a real estate agent informed her she could not do so without Steven's agreement because of the joint tenancy. Edna asked Steven to sign a new deed transferring the property to Edna's sole ownership. Steven refused. Steven testified that he declined to transfer ownership back to Edna because he believed Faye would dissipate Edna's assets.

¶11 On June 21, 2019, Edna sued Steven for declaratory relief, rescission, and quiet title to the Milkhouse property. Via counsel, she alleged she was not aware she had transferred an ownership interest to Steven when she signed the Quitclaim Deed in 2016 and she only learned of the effect of the deed when she attempted to sell the property. She alleged Steven had obtained the deed via undue influence and fraud. She asked the court to rescind the Quitclaim deed and quiet title in her favor.

¶12 Edna filed a First Amended Complaint on September 13, 2019, adding allegations concerning Steven's failure to contribute financially to the upkeep of the Milkhouse property, and allegations of damages she incurred due to being unable to sell the property. On January 24, 2020, she filed a Second Amended Complaint that added mistake and undue influence as bases for her declaratory judgment and rescission causes of action.

4

¶13 Edna was deposed for the lawsuit on November 7, 2019. At that time, she continued to care for her own needs, including using a computer, paying her own bills, and filling out her own tax returns. Edna identified her signature on the Quitclaim Deed but claimed she did not remember the circumstances under which it was completed. She further claimed she forgot about its existence until she decided to sell the property in 2019.

¶14 On August 20, 2020, during the pendency of Edna's lawsuit against Steven, Edna's counsel advised the court that Edna had died. Faye was appointed Personal Representative for Edna's estate, and the Estate was substituted as a party to the lawsuit on September 4, 2020.

¶15 The matter proceeded to a bench trial in the District Court on February 8, February 10, and March 1, 2021. The court issued its Findings of Fact, Conclusions of Law, and Order on November 1, 2023. However, the court stayed the matter on November 20, 2023, advising the parties that its November 1, 2023 decision failed to address the Estate's claim of constructive trust resulting from unjust enrichment—an issue which had not been pled but which was tried by consent under M. R. Civ. P. 15(b)(2).

¶16 The District Court subsequently issued the Amended Order that is before us on appeal. In that order, the court determined Edna had voluntarily transferred a joint tenancy to Steven via the Quitclaim Deed and the deed's language clearly states the terms of the transfer without mistake or ambiguity. The court concluded this voluntary transfer vested to Steven actual title of the Milkhouse property as a joint owner. It further determined Steven, as an owner of the property, did not engage in misconduct when he vetoed its possible sale.

5

¶17 The court further concluded the Estate had failed to prove Steven exerted any undue influence over Edna that resulted in her executing the Quitclaim Deed, nor did it prove any fraud perpetrated upon Edna. Since there was no mistake, undue influence, or fraud, there was no basis to rescind the Quitclaim Deed. The court also determined the Estate had not proven Steven was unjustly enriched and therefore no constructive trust existed.

¶18 The District Court ruled the Quitclaim Deed reflects the parties' rights to the Milkhouse property; since Edna and Steven owned the property as joint tenants with the right of survivorship, Steven has sole rights to the property due to Edna's death.

¶19 On appeal, the Estate argues the District Court erred in concluding no constructive trust arose. Section 72-38-123, MCA, provides, "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the holder were permitted to retain it." To prove Steven was unjustly enriched, Edna or her Estate needed to establish: (1) defendant received a benefit; (2) defendant knew about or appreciated the benefit; and (3) defendant accepted or retained the benefit under circumstances where it was inequitable for defendant to do so. *Darty v. Grauman*, 2018 MT 129, ¶ 11, 391 Mont. 393, 419 P.3d 116. Here, the District Court determined Steven received a benefit and appreciated the benefit, but the Estate failed to prove Steven accepted or retained the benefit under inequitable circumstances. The court based this determination on its conclusion that the Estate failed to prove the Quitclaim Deed was induced by mistake, fraud, or undue influence.

6

¶20 The Estate argues the court erred in this determination because it incorrectly concluded mistake, fraud, or undue influence is required to prove unjust enrichment. The Estate relies on *Northern Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 29, 368 Mont. 330, 296 P.3d 450, which explains, "Montana law no longer requires some wrongful act on the part of the defendant in order to establish a constructive trust." *Northern Cheyenne* further provides that unjust enrichment, in the context of a constructive trust, does not necessarily implicate the performance of a wrongful act. As a concept of restitution, unjust enrichment simply requires a party hold property under such circumstances that in equity and good conscience he ought not retain it. *Northern Cheyenne*, ¶ 33 (citations and internal quotations omitted). Citing *Volk v. Goeser*, 2016 MT 61, ¶ 45, 382 Mont. 382, 367 P.3d 378, the Estate argues it needed only to prove that, under the circumstances of this case, Steven's retention of the Milkhouse property would be inequitable without payment of its value. The Estate argues Steven was unjustly enriched because he intended to use the Quitclaim Deed to ensure he inherited an amount he believed he was entitled to, rather than using the value of the property for Edna's benefit during her lifetime.

¶21 The remedies of constructive and resulting trusts are equitable in nature. The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs the appellate court to review and determine questions of fact as well as questions of law. Although this statute appears to provide this Court with broad powers of review, we continue to defer to the trial court's judgment in those cases presenting close questions of fact. We will not disturb the district court's factual findings unless the record

7

establishes a decided preponderance of the evidence against them. *Gitto v. Gitto*, 239 Mont. 47, 50, 778 P.2d 906, 908 (1989). We review questions of law to determine if the district court's legal conclusions are correct. *Volk*, ¶ 18.

¶22 The Estate argues we should overturn the District Court's findings because that court ignored some evidence and failed to give sufficient weight to other evidence. However, it is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *Northcutt v. McLaughlin*, 2019 MT 18, ¶ 11, 394 Mont. 112, 433 P.3d 715. Our review of the record does not persuade us to disturb the District Court's factual findings in this instance. Moreover, while the Estate is correct that it need not have proven mistake, fraud, or undue influence to support a determination that Steven was unjustly enriched, we nonetheless agree the District Court reached the right result, even though it incorrectly focused on whether Steven had engaged in a wrongful act. As found by the District Court, Edna had given Faye significant amounts of monetary assistance Steven did not receive, and Steven understood the Quitclaim Deed would "balance the estate" so that he and Faye would ultimately receive equal shares of their parents' remaining assets.

¶23 Finally, the Estate asserts the District Court erred in concluding the Quitclaim Deed gives Steven sole right to the Milkhouse property because ownership passed to him upon Edna's death via the right of survivorship. The Estate argues its ownership interest in the Milkhouse property was never at issue and it has a right to be heard. However, the right of survivorship exists by virtue of the grant in the deed itself. That right of survivorship normally allows the survivor to take full title to the property and is not related to the estate.

8

*In re Estate of Matye*, 198 Mont. 317, 320, 645 P.2d 955, 957 (1982) (citing § 70-20-310, MCA). We are unpersuaded by the Estate's argument that the resolution of this issue was not before the District Court; since the court did not rescind the Quitclaim Deed, title to the Milkhouse property passed to Steven upon Edna's death. Thus, the Estate never had an ownership interest in the Milkhouse property.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶25 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA